154 So.2d 334 (1963)
Bertha SPAULDING, Petitioner,
v.
FLORIDA INDUSTRIAL COMMISSION and Onny Amon, Inc., Respondents.
No. 63-94.
District Court of Appeal of Florida. Third District.
June 11, 1963.
*335 Ainslee R. Ferdie, Miami, for petitioner.
Burnis T. Coleman and Lawrence Kanzer, Tallahassee, Meyer M. Brilliant, Miami, for respondents.
Before CARROLL, HORTON and BARKDULL, JJ.
CARROLL, Judge.
By certiorari petitioner seeks review of a decision of the Florida Industrial Commission, Unemployment Compensation Board of Review, affirming an Appeals Referee's decision which denied benefits upon a determination that the petitioner was guilty of misconduct connected with her work within the meaning of the applicable statute.[1]
The facts as found by the Appeals Referee were stated in his report as follows:
"Claimant is fifty-one years of age. Her employment history reflects experience as a grocery supermarket worker. She became employed with employer (-35416) an employer that operates a grocery supermarket, in November 1960. In this employment, appellant did general work which included, after a period of time on the job, cashiering. With respect to appellant's work as a cashier, she was instructed by her employer, on more than one occasion, to ring up all sales immediately and if she was in the process of ringing up a sale for a customer and another customer gave her the exact cost of an item, to take such money and ring it up immediately the sale to the previous customer was concluded. The employer subscribes to a shopping service that checks employees for, among other things, service, courtesy and general attitude. The method of operation of this service is, generally, to have operators make purchases and have another operator observe while such purchases are made. On May 31, 1962, at a time when appellant was on duty as a cashier, this service shopped the employer's store. During this check, at a time when appellant was in *336 the process of ringing up a sale, an operator made a purchase for which the exact price of the item purchased was given to claimant. This was not immediately recorded on the cash register as appellant was in the process of checking out another customer at the time she took the money for this purchase. However, this particular purchase was not recorded on the cash register within ten to fifteen minutes after this transaction was concluded. During this ten to fifteen minute period, appellant had reasonable opportunity to record such sale on the register. This transaction was observed by an operator of the shopping service. When claimant did not, ten to fifteen minutes after accepting exact change for an item purchased while she was busy with another customer, record such transaction on the cash register even though she had reasonable opportunity to do so, the employer was summoned to the store. The employer checked the cash in the register and the cash register tape. The item for which appellant had received the exact change from a customer while she was busy with another customer, did not appear on the tape. Upon checking the cash in the register, the employer determined that it was over, $11 and change, what should be there. The employer questioned claimant as to why the item she had received exact change for was not on the register, but received no explanation. Because of this failure to properly record sales on the cash register, appellant was discharged on May 31, 1962."
As disclosed by the Referee's order, the disqualification on the above facts was decided on the following reasoning:
"The testimony adduced in this case clearly shows that appellant was discharged for failing to record sales, in accordance with employer instructions. For a worker to fail to adhere to employer requirements, of which he has been advised, is conduct which is clearly contrary to the type conduct an employer has every right to expect of a worker. Such conduct is tantamount to an intentional disregard of an employer's interest and is misconduct. Accordingly, in this instance, it should be held that claimant was discharged for misconduct connected with her work, within the meaning of this Law."
We are unable to agree with the conclusion reached by the Referee and the Board that the claimant's conduct as outlined above was "tantamount to an intentional disregard of her employer's interest" and was "misconduct connected with her work" within the meaning of the statutory provision involved. In our opinion the construction placed on the statute by the Referee and Board was too narrow. The facts fail by a substantial margin to establish misconduct for which disqualification for benefits is imposed. Bad faith on the part of the checker was not established. The absence of the exact payment item on the cash register tape permits an inference it was not registered, but does not amount to sufficient evidence to establish that the checker appropriated the payment. An inference equally if not more logical would be that someone picked it up during the time the checker was waiting on the other customer. The operative did not observe what happened to the payment after it was made.
In dealing with a case under a similar statute the Supreme Court of Wisconsin had this to say:[2]
"* * * If mere mistakes, errors in judgment or in the exercise of discretion, minor and but casual or unintentional carelessness or negligence, and similar minor peccadilloes must be considered to be within the term `misconduct', *337 and no such element as wantonness, culpability or wilfulness with wrongful intent or evil design is to be included as an essential element in order to constitute misconduct within the intended meaning of the term as used in the statute, then there will be defeated, as to many of the great mass of less capable industrial workers, who are in the lower income brackets and for whose benefit the act was largely designed, the principal purpose and object under the act of alleviating the evils of unemployment by cushioning the shock of a lay-off, which is apt to be most serious to such workers. In view of these consequences which would thus result if the provision as to misconduct, under which an employee may become subjected to the forfeiture, must be deemed applicable to all types of `misconduct' that can be considered to be within the broad scope of that term (as defined in the above quotation from 40 C.J. p. 1220), and in view of the ambiguous or doubtful import in its meaning as used in the statute, it is necessary and proper to resort to the rule that statutes providing for forfeitures are to be strictly construed and terms and provisions therein, which are ambiguous or of doubtful meaning, will be given the construction which is least favorable to working a forfeiture, so as to minimize the penal character of the provision by excluding rather than including conduct or cases not clearly intended to be within the provision. * * * The application of these principles leads to the conclusion, in view of the matters to be taken into consideration, as stated above, that the intended meaning of the term `misconduct', as used in sec. 108.04(4) (a), Stats., is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed `misconduct' within the meaning of the statute."
We regard as reasonable and proper the interpretation which the Wisconsin court put on its statute which reads "has been discharged by the employer for misconduct connected with his employment." As so interpreted it is obvious there may be violations of rules for which an employer might choose to discharge a workman which would not operate to disqualify the worker for benefits under the act. Thus in the Neubeck case the Wisconsin court held that an employed taxi driver was not disqualified for benefits upon being discharged by his employer for failing to report two accidents in violation of the employer's rule requiring such reports to be made; and in another case decided the same day,[3] the Wisconsin court held that three listed violations of rules for which a taxi driver was discharged did not amount to a disqualifying discharge within the meaning of the statute. In the latter case the rule violations for which the worker was discharged were disclosed in the opinion as follows:
"`John L. Schroeder was discharged on March 7, 1939, for his entire bad *338 record of violations of company rules; had been given many warnings for these violations which are as follows:
"`1938: Earnings per mile below average for December. Total bookings below average for December.
"`1939: January 8, warned about loafing on duty and hanging around night clubs instead of tending to business. * * *
"`Checking in short, February 3, 20, 27. Warned. Earnings per mile below average for January and February.'"
In holding that discharge of a workman for those rule violations was not such as would disqualify the worker from benefits under the statute, the Wisconsin court said (296 N.W. at 644):
"`* * * The employe's failure to attain the standard set by the employer was due at most to inefficiency.' In this connection the Tribunal concluded that `mere inefficiency does not constitute misconduct'; and there is also likewise applicable its finding that Schroeder was not discharged for misconduct within the meaning of sec. 108.04(4) (a), Stats. As neither mere inefficiency on the part of Schroeder because of which his earnings and daily receipts were below the standards which appellant considered satisfactory, nor his `checking in short', which did not amount to improper conduct constituting a lack of regard for his duties and obligations, constituted conduct evincing such wilful or wanton disregard of appellant's interests as is found in deliberate violations or disregard of standards of behavior which an employer has the right to expect of his employe, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or the employe's duties and obligations to his employer, the conduct for which Schroeder was discharged was not misconduct within the intended meaning of that term as used in sec. 108.04 (4) (a), Stats., which is construed in Boynton Cab Company v. Neubeck et al., [237 Wis. 249,] 296 N.W. 636, decided herewith."
The respondent relies on Salvitti v. Unemployment Compensation Board of Review, 189 Pa.Super. 102, 149 A.2d 586, in which disqualification was sustained upon discharge for violation of a rule by a single act of misconduct. There the employee's action was shown to be wilful misconduct and an intentional violation of the rule. The employer, a baker, had advertised a rule requiring that all packages taken out by employees be checked by the manager before leaving the store, and making it the duty of the employee to take packages to the manager for that purpose. With knowledge of the rule, the employee left the store with a package of food which had not been checked by the manager, and was so apprehended. In that case the court was entitled to and did hold that the misconduct was wilful and was a deliberate violation of the employer's rules and improper behavior amounting to misconduct disqualifying the employee for benefits. The circumstances of the case were such as to permit no other conclusion.
In the instant case we reach a contrary decision. The rule violation for which the petitioner Bertha Spaulding was discharged on her failure to ring up promptly the "exact amount" payment received by her during the course of checking out another customer, was not an act similar to that involved in the Pennsylvania case which must be regarded as a wilful and deliberate violation; nor does it stand out as a disregard of the standard of behavior which the employer has a right to expect of his employees, or negligence of such a degree or recurrence as to manifest equal culpability, wilful intent or evil design, or to show a substantial disregard of the employer's *339 interests or of the employee's duties and obligations to his employer. Rather the petitioner's act was one of inefficiency and a failure to perform her work with that degree of exactness and efficiency which the employer may desire or demand; but the inadvertence, ordinary negligence, or poor judgment and inattention which well could be charged against her did not constitute "misconduct" within the meaning of the statute such as to disqualify the claimant for benefits.
The unemployment compensation statute is designed to cushion the effect of unemployment by a series of benefit payments for a period to a worker who becomes unemployed. Discharge "for misconduct connected with his work" will disqualify a claimant, but in determining whether such a disqualification has occurred, the statute should be liberally construed in favor of the claimant for whose benefit it exists.
Accordingly, the decision of the Florida Unemployment Compensation Board of Review adopting the decision of the Appeals Referee is quashed and the cause is remanded with directions to enter an appropriate order not inconsistent with this opinion.
NOTES
[1] Section 443.06 Fla. Stat., F.S.A., includes as a ground of disqualification for benefits discharge "by his employing unit for misconduct connected with his work."
[2] Boynton Cab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636, 640.
[3] Boynton Cab Co. v. Schroeder, 237 Wis. 264, 296 N.W. 642.