609 So.2d 665 (1992)
Carmen E. BENITEZ, Appellant,
v.
GIRLFRIDAY, INC. and Florida Unemployment Appeals Commission, Appellees.
No. 91-3004.
District Court of Appeal of Florida, Third District.
November 24, 1992.
Thomas Eugene Zamorano, Legal Services of Greater Miami, Inc., Miami, for appellant.
William T. Moore, Tallahassee, for Unemployment Appeals Commission; No appearance for Girlfriday, Inc.
Before NESBITT, FERGUSON and GODERICH, JJ.
FERGUSON, Judge.
This appeal is from an Unemployment Appeals Commission order which finds that Carmen Benitez is disqualified from receiving unemployment benefits because she used vulgar language in expressing a disagreement with a supervisor over pay entitlements. We reverse.
Benitez was employed by Girlfriday, Inc., an agency which places temporary employees. *666 After a temporary assignment ended several days earlier than scheduled, Benitez telephoned her branch manager to inquire about the reduced assignment and to ask why she had not been paid for four hours of training. An argument ensued. During the argument, Benitez allegedly called her branch manager a "liar" and a "f____ing son of a bitch."[1] For that reason she was fired.
A claims examiner decided Benitez was entitled to unemployment compensation benefits. An appeals referee reversed the claims examiner's decision. The Unemployment Appeals Commission affirmed the decision of the appeals referee. The issue before us is whether Benitez's isolated use of obscene language, directed to a supervisor outside the presence of other persons, constituted misconduct under the unemployment compensation statute so as to bar a claim for benefits. We conclude that the use of offensive language in this isolated and private argument is not misconduct as defined in the statute.
Misconduct, as a ground for disqualification from unemployment compensation benefits, is to be narrowly construed. § 443.031, Fla. Stat. (1991); Pallas v. Unemployment Appeals Comm'n, 578 So.2d 487 (Fla. 5th DCA 1991); Hummer v. Unemployment Appeals Comm'n, 573 So.2d 135 (Fla. 5th DCA 1991); Mankato Lutheran Home v. Miller, 358 N.W.2d 96, 98 (Minn.Appeals 1984). The burden of proving misconduct is on the employer. Rogers v. Florida Unemployment Appeals Comm'n, 597 So.2d 382 (Fla. 2d DCA 1992); Lewis v. Unemployment Appeals Comm'n, 498 So.2d 608 (Fla. 5th DCA 1986). Moreover, there is a distinction between the word misconduct as used in labor law and misconduct as defined for unemployment compensation purposes. Mitchell v. Jewel Food Stores, 189 Ill. App.3d 450, 136 Ill.Dec. 813, 545 N.E.2d 337 (1989). Misconduct serious enough to warrant an employee's dismissal is not necessarily serious enough to warrant the forfeiture of compensation benefits. Doby v. Oklahoma Employment Security Comm'n, 823 P.2d 390 (Okla. App. 1991); Breithaupt v. Employment Appeals Bd., 453 N.W.2d 532 (Iowa 1990); Silva v. Nelson, 31 Cal. App.3d 136, 106 Cal. Rptr. 908 (1973); Unemployment Compensation Bd. v. Tumolo, 25 Pa.Commw. 264, 360 A.2d 763, 765 (1976).
Under section 443.036(26), Florida Statutes (1991), "misconduct" includes "conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee."[2] In determining whether the use of vulgar language comes within the purview of an unemployment compensation statute's definition of misconduct, courts have considered several factors including the frequency of the vulgar utterances, the presence of any fellow employees or clients, the existence of provocation, and the object of the abusive language. See generally David B. Harrison, Annotation, Use of Vulgar or Profane Language as Bar to Claim for Unemployment Benefits, 92 A.L.R.3d 106 (1979).
The record shows that Benitez became emotionally disturbed during a telephone conversation with her employer and that her outburst was an isolated incident,[3] *667 which occurred in a private telephone conversation held out-of-earshot of fellow employees and customers.[4]See Johnson v. Florida Unemployment Appeals Comm'n, 513 So.2d 1098 (Fla. 3d DCA 1987) (employee was not disqualified from unemployment benefits for using vulgar language where such language was not part of a pattern of behavior and did not occur in the presence of others). Compare Varig Brazilian Airlines v. Florida Dept. of Commerce, 354 So.2d 921 (Fla. 3d DCA 1978) (employee's repeated use of vulgarities in front of customers, among other things, was sufficient to warrant disqualification from benefits); Claim of Marquez, 490 N.Y.Supp.2d 872, 107 A.D.2d 959 (N.Y. App. Div. 1985) (disqualification from benefits reversed where it was the first time claimant used vulgar language in addressing a supervisor and where her remarks were uncalculated and made under stressful circumstances).
Accordingly, we quash the order of the Florida Unemployment Appeals Commission and remand with instructions to reinstate the decision of the claims examiner.
GODERICH, J., concurs.
NESBITT, Judge (dissenting):
I respectfully dissent.
An appeals referee found, and the Unemployment Appeals Commission agreed, that "the claimant's comments were insubordinate, abusive, and did demonstrate a wanton and intentional disregard of employee's interests. Accordingly, it must be concluded that the claimant's discharge was for misconduct connected with the job."
The essential facts which were resolved by an appeals referee in favor of the employer and against the claimant are as follows: The claimant, Carmen Benitez, was an employee of GirlFriday, a service that provides temporary and permanent employees to clients in the clerical field. Benitez had been on an assignment to Miami-Dade Community College Book Store to serve as a cashier where she in fact worked from May 10 to May 15, 1991. On that day she was terminated two days earlier than she had been advised and was paid only two hours of training rather than four which she had been promised. She telephoned Ms. Renee Arbelaez, branch manager of GirlFriday, and inquired as to why she had been terminated early and paid for fewer hours of training than expected. As Arbelaez explained the reasons, the claimant "went completely out of control, very loud and actually screaming " stating that "she was going to bad-mouth us and blackball us and proceeded to curse at me." Benitez admitted to the appeals referee that she had called Arbelaez three times, each time admitted calling her a "liar."[1] Arbelaez testified that "she kept continuously calling back, tried to badger my payroll department as well. Then they were referring the calls back to my office which is in the front " Arbelaez testified that Benitez called her a "fucking son of a bitch." Ultimately, Arbelaez admitted to the referee that she had terminated Benitez from GirlFriday because "I could not send her to any of my clients."
In its brief, the commission concedes that the name-calling in this case occurred "in the privacy of telephone conversations." If the case were that simple, I would agree that Johnson v. Unemployment Appeals Comm'n, 513 So.2d 1098 (Fla. 3d DCA 1987) controls and join the court. Here, the court recognizes the truth of the referee's finding which is quoted above  but nonetheless ignores the legal effect. It seems plain to me that notwithstanding the name-calling occurring in private that the totality of the circumstances clearly supports the appeals referee's finding that "The claimant's comments were insubordinate *668 and abusive." Even if all the occurrences are considered a single episode, that is sufficient to constitute grounds for denial of compensation.
In Ford v. Southeast Atlantic Corp., 588 So.2d 1039 (Fla. 1st DCA 1991), that court, in part, stated:
[R]epeated acts in violation of company policy are not necessary to constitute misconduct within the meaning of chapter 443, Florida Statutes.
In the following cases, single acts of insubordination have been held sufficient to constitute misconduct. Dorisma v. Florida Unemployment Appeals Comm'n, 544 So.2d 1110 (Fla. 3d DCA 1989); Stahl v. Unemployment Appeals Comm'n, 502 So.2d 78 (Fla. 3d DCA 1987); National Ins. Servs., Inc. v. Unemployment Appeals Comm'n, 495 So.2d 244 (Fla. 2d DCA 1986); Craft, Inc. v. Unemployment Appeals Comm'n, 478 So.2d 1183 (Fla. 2d DCA 1985); Citrus Central v. Detwiler, 368 So.2d 81 (Fla. 4th DCA 1979).
The legislature has delegated to the Unemployment Appeals Commission the responsibility for resolution of disputed unemployment compensation claims. §§ 20.171(4), 443.151(4), Fla. Stat. The administrative construction of a statute by an agency or board charged with its administration is entitled to great weight and will not be overturned unless clearly erroneous. State ex rel. Biscayne Kennel Club v. Board of Bus. Reg., 276 So.2d 823 (Fla. 1973). In Public Employees Relations Comm'n v. Dade County Police Benev. Ass'n, 467 So.2d 987 (Fla. 1985), that court held:
[A] reviewing court must defer to an agency's interpretation of an operable statute as long as that interpretation is consistent with legislative intent and is supported by substantial competent evidence.
When a communication between an employee and an employer degenerates, as the one in this case did, it matters not whether the speaker is the employer or the employee, the result is the same  the relationship of trust and respect is destroyed. That is exactly what happened in this case. Here, the intimidation, insults, and abuse thrust upon Ms. Arbelaez pervaded the entire relationship. Ms. Arbelaez testified, "I could not send her to any of my clients."
I would affirm the order under review.
NOTES
[1] Benitez admitted to hurling epithets generally, but denied having said that the manager was of gross canine ancestry.
[2] Section 443.036(26) provides:

MISCONDUCT.  "Misconduct" includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
[3] Several courts in other jurisdictions have held that a single verbal outburst which does not interfere with the employer's business is not the willful and wanton disregard for the employer's interests which, under the statute, is sufficient to constitute a forfeiture of benefits. E.g., Operators, Inc. v. Comeaux, 579 So.2d 1228 (La. App. 1991); Tilseth v. Midwest Lumber Co., 295 Minn. 372, 204 N.W.2d 644 (1973); Silva v. Nelson, 31 Cal. App.3d 136, 106 Cal. Rptr. 908 (1973).
[4] There is no contention or showing that any other employees overheard the appellant's statements. In fact it is conceded by the appellee that the name-calling occurred "in the privacy of a telephone conversation."
[1] Just after the commencement of the hearing before the appeals referee, claimant again referred to Ms. Arbelaez as a "liar," for which she was admonished.