611 So.2d 1329 (1993)
Leticia C. NELSON, Appellant,
v.
BURDINES, INC., and Florida Unemployment Appeals Commission, Appellee.
No. 92-1100.
District Court of Appeal of Florida, Third District.
January 12, 1993.
Klein & Nash and Mark H. Klein, Miami, for appellant.
William T. Moore, Tallahassee, for appellee.
Before BARKDULL, FERGUSON and GODERICH, JJ.
PER CURIAM.
Appellant Leticia Nelson appeals from a denial of unemployment benefits by the Florida Unemployment Appeals Commission, which reversed a claims referee's decision *1330 that awarded her benefits. The referee's decision reads in part as follows:

ISSUES INVOLVED: SEPARATION: Whether claimant voluntarily left work without good cause; provided that good cause shall include such cause as is attributable to the employing unit or consists of illness or disability of the individual requiring separation; or was discharged for misconduct connected with work and, if appropriate, the number of weeks the claimant is disqualified from receipt of benefits as provided in Sections 443.101(1) and 443.036(26), Florida Statutes, and Florida Administrative Code Rule 38B-2.017.
CHARGES TO EMPLOYER'S EMPLOYMENT RECORD: Whether the benefit payments made to claimant shall be charged to the employment record of the employer as provided in Section 443.101(9) and 443.131(3)(a), Florida Statutes, and Florida Administrative Code Rule 38B-2.006.

FINDINGS OF FACT: In December 1989, the claimant became employed as a sales associate for the employer. On August 30, 1991, the regional human resources manager issued the claimant a written warning. The claimant read the contents of the warning and placed her signature on same. The claimant then asked the manager to provide her with a copy of the warning. The manager assured the claimant that she would provide her with a copy later during the day. After several hours of not being provided with a copy of the warning, the claimant proceeded to the manager's office to find out when she would receive her copy. Upon reaching the office the claimant was notified that the manager had left for the day.
During the next four days the claimant was not able to obtain her copy as requested, because the personnel office was closed. On September 4, 1991, the claimant again went back to the personnel office and asked the assistant if she could speak with the manager. The claimant was notified that the manager was not present. The claimant then asked the assistant if she could obtain a copy of the warning. The claimant also notified the assistant that she wanted to place additional comments on the warning. The assistant notified the claimant that she would have to call the manager and obtain her approval. The manager was contacted and she directed the assistant to provide the claimant with the warning along with a separate sheet to write any comments. The manager also advised the assistant to supply the claimant with copies of her comments and the warning.
The assistant then handed the warning to the claimant. While reading the warning, the claimant discovered that the manager had placed additional comments on the warning. The comments alleged that other managers had previously warned the claimant about the adjustment. The claimant knew that this information was not true and, she became emotionally upset. The claimant acted out her emotions by tearing the warning in half. The claimant then gave one half of the torn warning to the assistant and she took the half that was in her hands and tore it into small pieces. Based upon the claimant's reactions of destroying a company document, she was discharged by the regional human resources manager on September 4, 1991.

CONCLUSIONS OF LAW: The law provides that an individual who has been discharged for misconduct connected with the work shall be disqualified from receiving benefits. "Misconduct connected with work" means an intentional act or course of conduct by the worker in violation of his duties and obligations to the employer.
The hearing record reveals that the claimant was discharged for destroying a company document. The evidence reveals that the claimant destroyed the company document because she became emotionally upset about the fact that the *1331 additional information placed on the document was untrue. It is recognized that the prudent thing to do was to write down her disagreement on the separate piece of paper that was issued to her, but because of the claimant's emotional response, her conduct in its worst light in the absence of similar behavior constituted nothing more than an isolated incident of poor judgment or good faith error in discretion. The appeals courts have consistently ruled that mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertence or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute. Tucker v. Florida Department of Commerce, 366 So.2d 845 (Fla. 1st DCA 1979). Since the false statements provoked the claimant's emotional response, then her conduct did not rise to the level of being considered an intentional disregard of her duties and obligations to the employer. Consequently, it must be held that the claimant was discharged for reasons other than misconduct connected with work.
During the hearing conflicting testimony was offered by both parties. The claimant contended that she did not tear up the document until it had been handed to her and she had read it. The employer witnesses contended that the document tore when the claimant attempted to snatch it away from the assistant and then she completed tearing up her half, without reading the contents. It is the responsibility of the referee to resolve any conflict of testimony offered during the hearing. In resolving the conflict, it has been observed that the employer witnesses, has [sic] given inconsistent hearing statements. The manager contended that she was on the phone listening to the conversation when the claimant tore up the document. The assistant contended that the manager was not on the phone when the claimant tore up the document. Based upon such inconsistent statement and demeanor displayed, and an all conflicts are resolved completely in favor of the claimant.
We reverse with directions to reinstate the unemployment compensation.[1]See and compare Diaz v. Winn-Dixie Store, Inc., 587 So.2d 677 (Fla. 3d DCA 1991); AT & T Communications, Inc. v. Johnson, 582 So.2d 177 (Fla. 3d DCA 1991); Kan v. P.G. Cook Assoc., 566 So.2d 932 (Fla. 3d DCA 1990); Johnson v. Florida Unemployment Appeals Comm'n, 513 So.2d 1098 (Fla. 3d DCA 1987); Verner v. Florida Unemployment Appeals Comm'n, 474 So.2d 909 (Fla. 2d DCA 1985); Davis v. Florida Unemployment Appeals Comm'n, 472 So.2d 800 (Fla. 3d DCA 1985); Hines v. Dept. of Labor and Employment Sec., 455 So.2d 1104 (Fla. 3d DCA 1984); Spaulding v. Florida Indus. Comm'n, 154 So.2d 334 (Fla. 3d DCA 1963).
NOTES
[1] Although the employee's actions may have been sufficient for discharge, this should not deny the employee unemployment compensation. See Benitez v. Florida Unemployment Appeals Comm'n, 609 So.2d 665 (Fla. 3d DCA 1992.)