650 So.2d 1089 (1995)
June E. MILLER, Appellant,
v.
BARNETT BANK OF BROWARD COUNTY and Florida Unemployment Appeals Commission, Appellees.
No. 94-1484.
District Court of Appeal of Florida, Third District.
February 22, 1995.
June E. Miller, in pro. per.
William T. Moore, Tallahassee, for appellees.
Before SCHWARTZ, C.J., and NESBITT and BASKIN, JJ.
PER CURIAM.
June Miller seeks reversal of an order of the Unemployment Appeals Commission [UAC] affirming the referee's determination denying her unemployment compensation benefits. In 1980, Miller began her career at Barnett Bank as a teller; she was promoted during her career to various Bank positions. At the time of her discharge in 1994, she had served, without incident, as branch operations manager for four years. The Bank discharged Miller when it suffered monetary losses[1] as a result of her decision to release funds to a customer prior to clearance of deposited money orders;[2] an action that violated the Bank's check approval guidelines. The Bank contested Miller's unemployment benefits application. The UAC agreed with the referee's denial of benefits. We reverse.
*1090 Although Miller's action may have justified her discharge, such conduct does not necessarily preclude entitlement to unemployment benefits. Nelson v. Burdines, Inc., 611 So.2d 1329, 1331 n. 1 (Fla. 3d DCA 1993); Benitez v. Girlfriday, Inc., 609 So.2d 665 (Fla. 3d DCA 1992). Miller may be denied benefits if the Bank discharged her for "misconduct connected with [her] work." § 443.101(1), Fla. Stat. (1993). Under section 443.036(26), Florida Statutes (1993), "misconduct" may be
[c]onduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
However, this court has held consistently that "an exercise of poor judgment ... does not amount to `misconduct.'" Kelley v. Pueblo Wholesale Co., Inc., 627 So.2d 534, 535 (Fla. 3d DCA 1993) and cited cases; Nelson, 611 So.2d at 1331. Accord Bulkan v. Florida Unemployment Appeals Comm'n, 648 So.2d 846 (Fla. 4th DCA 1995); Doyle v. Florida Unemployment Appeals Comm'n, 635 So.2d 1028 (Fla. 2d DCA 1994); Nemeth v. Palm Garden of Port St. Lucie, 629 So.2d 1010 (Fla. 4th DCA 1993), review denied, 639 So.2d 984 (Fla. 1994). "[M]ere inefficiency, unsatisfactory conduct, ... inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed `misconduct' within the meaning of the statute." Spaulding v. Florida Indus Comm'n, 154 So.2d 334, 337 (Fla. 3d DCA 1963) (quoting Boynton Cab. Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636, 640 (1941)). Thus, a single good faith mistake in judgment does not constitute `misconduct.'
The record fails to reveal competent substantial evidence to support a finding that Miller acted in willful or wanton disregard of the Bank's interests or that her actions demonstrated extreme negligence showing an intentional or substantial disregard of the Bank's standards or interests when she approved release to a customer of funds in excess of Bank guidelines. Consequently, her isolated error in judgment does not rise to the level of `misconduct' under section 443.036(26), Florida Statutes (1993). Compare Cancelliere v. BancFlorida FSB, 590 So.2d 23 (Fla. 2d DCA 1991) (bank vicepresident not entitled to benefits after writing numerous overdrafts despite a warning); Terjesen v. Florida Unemployment Appeals Comm'n, 491 So.2d 1189 (Fla. 3d DCA 1986) (bank teller not entitled to benefits after several acts of mishandling funds) with LaRocca v. Unemployment Appeals Comm'n, 643 So.2d 1199, 1199 (Fla. 5th DCA 1994) (benefits improperly denied where claimant "discharged for an isolated act involving poor judgment rather than [statutory] misconduct") and Gunther v. Barnett Banks, Inc., 598 So.2d 243 (Fla. 2d DCA 1992) (bank security officer entitled to benefits after isolated incident of bad judgment). Accordingly, we reverse the order under review.
Reversed and remanded.
SCHWARTZ, C.J., and BASKIN, J., concur.
NESBITT, Judge (dissenting):
I respectfully dissent. In the first place, the former customer deposited thirteen separate deposits in outlying branches of the Barnett system the day before he was repaid the monies. All this banking activity was known to the appellant. It seems to me this would have placed an experienced career bank officer, such as the appellant, on notice that something was awry.
More important, however, there is a significant dispute on this record that became the focus of factual determination, which having been made, constitutes competent substantial evidence. In this case, the bank guidelines, which were neither written nor published, placed limitations upon bank officers at certain levels of responsibility as to the maximum payout allowable in the exercise of their discretion. A bank officer testified before the appeals referee that at Mrs. Miller's level the limitation was not to exceed $25,000. *1091 Mrs. Miller testified, however, that she was subject to a $50,000 limitation. She admitted, however, that she was aware of the guidelines limitation. The appeals referee found that under either guidelines limitation, Mrs. Miller exceeded her discretionary limit. Having made a factual determination, as the appeals referee was entitled under the conflicting evidence, he found that it constituted competent, substantial evidence upon which the commission properly denied unemployment benefits. Under a myriad of cases, we are required to give deference to that finding and determination.
NOTES
[1] The referee concluded that the "discharge occurred because the employer suffered a considerable loss in the area of $46,000... ." Although the testimony as to Miller's guideline limit was in conflict, the referee did not resolve the conflict; he merely found that "either way, the claimant exceeded her approval limit." The dissent correctly notes that she was aware of the limitations. However, she also testified that several branch managers had "backed [her] up' in the past when she had slightly exceeded her guidelines.
[2] The majority of the deposits were American Express checks. The referee found that Miller had "verified the deposits, and there was nothing wrong with any of the transactions.