GREEN, Judge
(dissenting).
Respectfully, under the facts and circumstances of this ease, I cannot agree with the majority opinion which affirms the denial of unemployment compensation benefits to Bradford Yanda on the basis of “misconduct” as that term is defined in section 448.036(26), Florida Statutes (1998). In my view, Yanda’s conduct can be characterized as no more than one isolated incident of a good faith error in judgment which this court and others have said is insufficient for the denial of unemployment compensation benefits.
Prior to his discharge, Yanda had been employed by a Florida office of Aetna Life Insurance Company (“Aetna”) for six years in the capacity of an auditor. Before the subject incident, Yanda had an unblemished employment record and was considered a good employee.
In his capacity as an auditor, Yanda was permitted the use of a company ear. As a condition of his employment, Yanda agreed that he might be subject to a $200 penalty by Aetna if he was involved in an automobile accident which Aetna deemed preventable while operating the company’s car. On or about February 1, 1994, Yanda was involved in an accident when a female motorist struck Aetna’s car. Yanda did not know the cause of the accident, as he did not see the other car until after the impact. At the scene of the accident, Yanda was unable to communicate with the other driver because she spoke only Spanish. According to Yanda’s unrefut-ed testimony, there were eyewitnesses to the accident but he failed or neglected to obtain their names before they left the accident scene.
When the police arrived, Yanda was ticketed for the accident. Yanda protested his liability for the accident and requested a trial in traffic court. In accordance with Aetna’s policy, Yanda immediately reported what limited details he knew about the accident to Aetna. Aetna’s Corporate Risk Management Safety and Environmental Unit in Hartford, Connecticut, organized a committee to review the accident. The committee found the accident to be preventable by Yanda. However, the committee reached this finding based only on the limited information provided Yanda.[1]
Aetna notified Yanda of the preventability finding and set a due date for the payment of the $200.00 fine. In the interim, Yanda requested an appeal in accordance with Aetna’s guidelines, stating that he wanted a delay in Aetna’s final determination of preventability until after his day in traffic court. He anticipated that he would obtain more information about the accident in court to provide to Aetna for its full and fair determination of a preventability finding. Shortly thereafter, Aetna’s appeals committee convened, again considering only the limited information that Yanda initially provided, and found the accident to be preventable. In a subsequent letter, Aetna notified Yanda of the appeals committee’s finding and requested immediate payment. During conversations with his immediate supervisor, Yanda repeatedly asked for a delay in payment until he could gather the additional information about the accident because he was concerned about losing his job and severance benefits. Yanda feared that the finding of a preventable accident on his employment record would eventually become grounds for dismissal.[2]
Nevertheless, Yanda was notified that he had a week to pay the preventability fine and was warned that his failure to do so would *1220 constitute insubordination,[3] which could result in termination. Yanda examined Aetna’s “Rules of the Road” manual and noted that there was no mention of a preventability fine deadline and employee termination for failure to pay. Although Yanda never explicitly refused payment, he decided to delay payment pending the resolution of the traffic matter. Yanda reasoned that Aetna would not have adequate grounds for firing him for a simple delay in payment.
Aetna terminated Yanda when he failed to pay the penalty by the prescribed deadline. Aetna deemed Yanda’s failure to pay to be an act of insubordination. The referee in the hearing below agreed, finding that Yanda intentionally refused to follow a valid work directive by his employer and this constituted misconduct which rendered him ineligible to receive unemployment benefits. It is from this finding that Yanda brings the instant appeal.
Under section 443.036(26), “misconduct” includes but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer’s interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer’s interests or of the employee’s duties and obligations to his employer.
This statute is remedial in nature and as such should be construed liberally in favor of the claimant seeking benefits. Benitez v. Girlfriday, Inc., 609 So.2d 665 (Fla. 3d DCA 1992); Hummer v. Unemployment Appeals Comm’n, 573 So.2d 135 (Fla. 5th DCA 1991); Spaulding v. Florida Indus. Comm’n, 154 So.2d 334 (Fla. 3d DCA 1963). Although an employer may consider behavior to be insubordinate, the statute requires that the employee’s conduct be tantamount to an intentional disregard of the employer’s interest to be defined as misconduct. Spaulding, 154 So.2d at 339.
I fail to see how Yanda’s failure to pay this penalty by the deadline date arbitrarily set by his employer adversely affected the employer’s interest. Yanda’s decision not to pay Aetna the $200 penalty as requested was undoubtedly ill advised. Obviously, in hindsight, the more prudent course of action for Yanda would have been to pay the penalty under protest and attempt to resolve the matter with Aetna after the disposition of his traffic case. But at most, Yanda’s conduct can only be deemed to be poor judgment. Misconduct serious enough to warrant an employee’s dismissal is not necessarily serious enough to warrant forfeiture of compensation benefits. Benitez, 609 So.2d at 666.
This court and other Florida courts have consistently held that the exercise of poor judgment, particularly in an isolated incident, does not amount to misconduct sufficient to deprive an employee of unemployment benefits. Kelley v. Pueblo Wholesale Co., 627 So.2d 534 (Fla. 3d DCA 1993) (manager’s delay in reporting a shortage at her cash register until she completed a personal investigation to determine the source of the discrepancy was not a “willful or wanton” disregard of store’s interest, but at worst, poor judgment); Nelson v. Burdines, Inc., 611 So.2d 1329 (Fla. 3d DCA 1993) (employee’s emotional reaction of destroying a company document was an isolated incident of poor judgment or a good faith error in discretion, not intentional disregard of employer’s interests); Woskoff v. Desta Enter., Inc., 187 So.2d 101 (Fla. 3d DCA 1966) (employee’s argument with her supervisor demanding that she be paid for a holiday was not tanta *1221 mount to an intentional disregard of the employer’s interest, but at most poor judgment); Bulkan v. Florida Unemployment Appeals Comm’n, 648 So.2d 846 (Fla. 4th DCA 1995) (a mechanic’s failure to comply with a new policy of completing work orders for repairs was an isolated incident of poor judgment); Hubbard v. Best Termite & Pest Control, 627 So.2d 581 (Fla. 2d DCA 1993) (employee’s sick day after employer refused vacation day constituted poor judgment not misconduct); Rogers v. Florida Unemployment Appeals Comm’n, 597 So.2d 382 (Fla. 2d DCA 1992) (a pre-school teacher’s leaving a classroom of children unattended while searching for one missing child was not willful or wanton disregard of the employer’s interest, at most bad judgment).
In finding that Yanda’s conduct constituted misconduct sufficient for the forfeiture of unemployment benefits, the referee relied solely upon this court’s decision of Hines v. Dep’t of Labor and Employment Sec., 455 So.2d 1104 (Fla. 3d DCA 1984). That case could not be more factually dissimilar from this case. In that decision, Hines became embroiled in a heated argument with a fellow employee. Both Hines and the other employee were reprimanded for their conduct by the vice president. This led to an argument between Hines and the vice president wherein Hines challenged the vice president to fire him. Hines was not terminated at that time but the vice president warned Hines never to make such a challenge again. Approximately two months later, Hines became embroiled in a heated argument with his immediate foreman in the presence of other employees after the foreman ordered Hines back to work. The foreman inquired of Hines whether Hines liked or wanted his job. In response, Hines slammed his fist down on a stack of skids and shouted that he “didn’t give a damn” if the foreman fired him and that the foreman should go ahead and fire him. 455 So.2d at 1106. Hines was terminated by the foreman. In finding that there was substantial competent evidence to support the referee’s finding that Hines had been discharged for misconduct connected with his work, this court noted that: (1) “[HJines’ insubordinate and offensive challenge of the foreman’s authority in the presence of other employees was extremely detrimental to the work atmosphere from which an employer must be able to direct and command his employees.”; (2) Hines had disregarded a prior warning not to challenge his superiors to fire him; and (3) Hines had angrily refused to comply with the foreman’s legitimate work order. Id. at 1106-7.
Unlike Hines, Yanda’s challenge to the immediate payment of Aetna’s penalty was not done in the presence of other employees but was done strictly in accordance with Aet-na’s established internal procedures. Second, although Aetna made more than one request for Yanda to make payment, this was nevertheless one isolated incident in Yanda’s otherwise untarnished history with Aetna. Finally, Yanda’s failure to pay the penalty was not in willful defiance of his employer’s directive. Rather, Yanda in essence sought a delay to gather additional information to present to his employer for a full and fair determination of whether he could have prevented the accident. It is quite obvious that Yanda, unlike Mr. Hines, very much cared about his employment and wanted to preserve his otherwise unblemished record.
Other cases where a finding of misconduct has been upheld have involved serious incidents on a recurrent basis which have affected the employer’s interests. See Rubido v. Brinks, Inc., 601 So.2d 1298 (Fla. 3d DCA 1992) (employee of an armored car company violated a number of the employer’s rules demonstrating a plain disregard for the company rules in a business which requires strict adherence to a certain set of standards); Varig Brazilian Airlines v. Florida Dep’t of Commerce, 354 So.2d 921 (Fla. 3d DCA 1978) (baggage handler repeatedly refused to carry out his assigned duties and consistently violated personnel and company policies); Cancelliere v. BancFlorida FSB, 590 So.2d 23 (Fla. 2d DCA 1991) (contrary to bank personnel rules and repeated warnings not to continue this activity, a bank vice president wrote a number of overdrafts on his own *1222 account); Trinh Trwng Do v. Amoco Oil Co., 510 So.2d 1068 (Fla. 4th DCA 1987) (gasoline truck driver was involved in a series of accidents and consistently operated his inherently dangerous vehicle in excess of the speed limit). The facts of these cases can in no way be analogized to the case before us.
In summation, this employee’s action in this case can only be characterized as purely a good faith error in judgment. Although Yanda’s conduct may have arguably justified his termination, it certainly did not justify a forfeiture of his unemployment compensation benefits.
I would reverse the decision below.

. At the hearing below, Aetna's operation manager was unable to state the basis upon which the committee made its preventability finding. Nor are there any standards or criteria for determining preventability outlined in Aetna's “Rules of the Road” manual given to its drivers.

. In the previous three years, Aetna had laid off 10,000 employees nationwide. All other auditors in Yanda’s department on the east coast of Florida had already been laid off. As a result, Yan-da’s territory was expanded to include Key West, Dade, Broward, Palm Beach and Martin counties.

. Aetna’s "Personnel Policies and Programs” manual defines insubordination: i.e. employees who absolutely refuse to comply with reasonable work-related requests or instructions from a supervisor or other representative of management or otherwise compromise a supervisor’s authority-