693 So.2d 1109 (1997)
Frances E. WEBB, Appellant,
v.
Douglas N. RICE, C.P.A., and Florida Unemployment Appeals Commission, Appellees.
No. 96-1565.
District Court of Appeal of Florida, Third District.
May 21, 1997.
*1110 Frances E. Webb, in pro. per.
William T. Moore, Tallahassee, for appellees.
Before NESBITT, JORGENSON and SHEVIN, JJ.
SHEVIN, Judge.
Frances Webb ["claimant"] appeals an order of the Florida Unemployment Appeals Commission reversing the decision of the appeals referee granting her unemployment benefits. We reverse.
Douglas Rice, C.P.A., employed claimant as a bookkeeper for approximately two years. Upon her discharge, she sought unemployment benefits. The claims examiner determined that claimant was entitled to benefits. In affirming the examiner's decision, the referee made the following pertinent findings of fact
The claimant had been instructed by the employer not to type file labels. The employer had a specific way in which it wanted the labels to be typed. The claimant believed that the employer wanted the secretary to type labels. The time came when there was no one to type the labels, and the claimant took it upon herself to do so.... The employer also believed that the claimant continued to use a puncher although she had been instructed not to do so. The claimant denied using the puncher again after she was told not to.... On or about September 13, 1995, the office manager had assigned a task to the claimant involving W-2 formats. The office manager believed the claimant was taking too long in completing the task. The claimant continued to work on the assignment and told the office manager that she was only one cent off. The officer manager approached the claimant to take the work away, and the claimant covered the work with her body.... The claimant believed the officer manager was upset because the office manager had had a verbal altercation on the telephone.... On September 15, 1995, since the claimant was going on vacation, the owner asked the claimant about the status of the work. The owner was loud in his request and the claimant covered her ears, exclaiming, `you are driving me crazy.' ... While the claimant was on vacation, the employer considered the claimant's future employment status.... The claimant returned from her vacation ..., and she was advised *1111 by the owner that her services were no longer needed.
The referee concluded, in pertinent part, that claimant did not use the hole puncher after the employer had forbidden such use, that the claimant typed file labels in order to expedite her work, and that she failed to give her supervisor her work when requested during "a difficult or critical moment." Although the referee concluded that claimant might have been a difficult employee at times and may have used poor judgment, he accepted her version of the events, and found that her use of a hole puncher, her typing of file labels, and her emotional reaction and failure to give her supervisor certain papers upon request, did not constitute misconduct.
The Commission rejected the referee's conclusion and found that claimant intentionally violated reasonable company directives.[1] The Commission concluded that this behavior as a whole amounted to misconduct disqualifying claimant from entitlement of benefits. Claimant appealed.
A claimant is not entitled to unemployment compensation benefits if the employer discharges the claimant for misconduct connected with work. § 443.101(1)(a), Fla.Stat. (1995). Section 443.036(26), Florida Statutes (1995), defines "misconduct" as
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
Courts should narrowly construe the disqualification provisions, and should liberally construe the statute in favor of the claimant when determining whether a claimant's actions constitute misconduct in accordance with its remedial nature. See Betancourt v. Sun Bank Miami, N.A., 672 So.2d 37 (Fla. 3d DCA 1996). In keeping with those principles, "misconduct [concerning company policies] usually involves repeated violations of explicit policies after several warnings." Grossman v. J.C. Penney Co. 2071, 689 So.2d 1206, 1207 (Fla. 3d DCA 1997)(quoting Fiedler v. Burdines, Inc., 654 So.2d 1276, 1277 (Fla. 2d DCA 1995)); Bulkan v. Florida Unemployment Appeals Comm'n, 648 So.2d 846, 848 (Fla. 4th DCA 1995), and cited cases. E.g., Bozzo v. Safelite Glass Corp., 654 So.2d 1042 (Fla. 3d DCA 1995); Zorrilla v. L. Luria & Son, Inc., 645 So.2d 1078 (Fla. 3d DCA 1994);
Although claimant's actions may have justified discharge from employment, the record does not show that such conduct justified denial of benefits. Grossman, 689 So.2d at 1208; Betancourt, 672 So.2d at 38; Cooks v. Unemployment Appeals Comm'n, 670 So.2d 178, 180 (Fla. 4th DCA 1996); Livingston v. Tucker Constr. & Eng., Inc., 656 So.2d 499, 500 (Fla. 2d DCA 1995); Hummer v. Unemployment Appeals Comm'n, 573 So.2d 135, 137 (Fla. 5th DCA 1991). A claimant's "mere inefficiency, unsatisfactory conduct,... inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed `misconduct' within the meaning of the statute." Spaulding v. Florida Indus. Comm'n, 154 So.2d 334, 337 (Fla. 3d DCA 1963) (quoting Boynton Cab. Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636, 640 (1941)).
In this case, the record supports the referee's decision that claimant's behavior does not constitute misconduct. The claimant testified that she typed the labels in order to complete her work because the labels were not done by the person assigned to do that work. Claimant's action shows a good-faith error in judgment based on claimant's misguided decision that she should type the labels in order to complete her work. In addition, claimant explained that she did not immediately accede to her supervisor's request to give her certain papers because she wished to complete the project. As to the *1112 incident involving her employer's request for a status report, she testified that her statement and actions were in response to the employer yelling at her. Her improper and emotional reactions in these two instances amount to nothing more than isolated instances of errors in judgment or "mere ... unsatisfactory conduct." Id.; see, e.g., Velasquez v. Argus Int'l, 689 So.2d 1303 (Fla. 3d DCA 1997); Calvo v. Florida Coca-Cola Bottling Co., 672 So.2d 847 (Fla. 3d DCA 1996); Kelley v. Pueblo Wholesale Co., 627 So.2d 534 (Fla. 3d DCA 1993); Nelson v. Burdines, Inc., 611 So.2d 1329 (Fla. 3d DCA 1993); Whitaker v. Pizza Hut, 502 So.2d 84 (Fla. 4th DCA 1987); Woskoff v. Desta Enter., Inc., 187 So.2d 101 (Fla. 3d DCA 1966); Bulkan, 648 So.2d at 846.
The record, however, does not support the referee's conclusion that claimant did not use the hole puncher in violation of her employer's instruction. Claimant testified that she used the puncher in order to complete her work. That action, however, may not be characterized as the type of wanton, willful or substantial action sufficient to justify denial of benefits. See Smith v. Krugman-Kadi, 547 So.2d 677 (Fla. 1st DCA 1989), review denied, 558 So.2d 20 (Fla.1990) and cited cases.
As the foregoing demonstrates, the referee's decision was supported by competent substantial evidence. The Commission improperly reweighed the evidence and reversed the referee's decision. See Freddo v. Unemployment Appeals Comm'n, 685 So.2d 874 (Fla. 2d DCA 1996); Volk v. Florida Unemployment Appeals Comm'n, 673 So.2d 574 (Fla. 4th DCA 1996); Barreto v. Taco Bell Corp., 661 So.2d 874 (Fla. 3d DCA 1995); Livingston, 656 So.2d at 500; Kan v. P.G. Cook Assoc., 566 So.2d 932 (Fla. 3d DCA 1990). Accordingly, we reverse the Commission's order.
Reversed and remanded.
NESBITT, Judge, dissenting:
I respectfully dissent. There is no reported Florida decision which parallels the present case. However, clearly, the commission did not "reweigh the evidence." Instead, it disagreed with the referee's conclusions of law, as it was entitled to do. Admittedly, the referee made favorable findings on behalf of both the claimant and the employer. What the commission did was to extrapolate the litany of findings in favor of the employer[2] *1113 and aggregate those findings to show a violation of section 443.036 Florida Statutes (1995), which provides:
443.036. Definitions
As used in this chapter, unless the context clearly requires otherwise:
(26) Misconduct."Misconduct" includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
Under that section's definition of "misconduct," the legislature has emphatically made it clear that the various components of "misconduct" are to be determined in the disjunctive. Consequently, the instant list of petit violations aggregated, amounted to a recurrence of either carelessness or neglect, evincing a substantial disregard of the employer's interest.
Again, the commission did not reweigh a single finding of the referee, but rather extrapolated the various findings and aggregated them. While no case is directly on point, Hartenstein v. Florida Dept. of Labor & Employment Sec., 383 So.2d 759 (Fla. 2d DCA 1980), in dicta, clearly recognizes that there may be an aggregation of factors in determining whether an employee was discharged for misconduct.
Sifting through the matter, one can easily recognize that the claimant displayed a great distaste for her coworkers, and became a disruptive force in the office. These violations included the claimant's exclamation, "You are driving me crazy," made while holding her ears, and directed to the employer when he questioned the claimant about the status of her work, several days before she was about to leave on vacation.
I conclude that what occurred here is a proper basis for determining that claimant's behavior amounted to "misconduct." See Caputo v. Florida Unemployment Appeals Comm'n, 493 So.2d 1121 (Fla. 3d DCA 1986) (finding school principal who refused to obey directive to desist certain religious activities in classroom, found guilty of misconduct connected with work); National Ins. Servs., Inc. v. Unemployment Appeals Comm'n, 495 So.2d 244 (Fla. 2d DCA 1986) (holding employee's refusal to take turn cleaning small coffee break area constituted misconduct); Hines v. Department of Labor & Employment Sec., 455 So.2d 1104 (Fla. 3d DCA 1984) (upholding referee's disqualification of claimant who made offensive challenge to his supervisor to fire him in presence of other employees, despite prior warning and also belligerently refused to follow foreman's direct order to do certain work). The claimant argues that she was not found guilty of any "careless or negligent" conduct. However she should not be comforted by this fact, because what she did or failed to do, then becomes willful or wanton, and therefore all the more egregious. The claimant was rude to the company owner, her supervisor, and *1114 fellow employees. She objected to Spanish being spoken by fellow employees, even during their lunch break. In a multiethnic locale such as South Florida, such behavior by the claimant is especially deleterious to a productive work environment.
In sum, I conclude that the order of the Appeals Commission reversing the decision of the appeals referee should be affirmed.
NOTES
[1] In addition to the incidents noted by the referee, the Commission also stated that claimant yelled at the employer when he requested a status report.
[2] The referee's report reflects:

FINDINGS OF FACT: The claimant became employed by an accounting firm, as a bookkeeper, on June 15, 1993. During the ensuing period, the employer became dissatisfied with the claimant's behavior in the office. The employer's owners had been told that at times, the claimant had been nasty to co-workers. The claimant did not like Spanish to be spoken in the office and objected to Spanish being spoken while she was having lunch in the kitchen. The claimant changed her lunch break time to avoid other employees who spoke Spanish during their break. In approximately May 1995, an employee who worked part-time became a fulltime employee and the office manager. From this date on, the claimant and the office manager, who was now the claimant's supervisor, experienced conflicts. The office manager believed the claimant failed to follow policy and was disruptive and insubordinate at times. The claimant, who did not know that the office manager was her supervisor until late August 1995, believed the office manager was difficult and always questioning her work. There were a number of tasks that the claimant had been performing throughout her employment but now, those tasks had to be cleared with the office manager or the claimant was not allowed to perform the task in question. Other routines were also changed. The claimant had been instructed by the employer not to type file labels. The employer had a specific way in which it wanted the labels to be typed. The claimant believed that the employer wanted the secretary to type labels. The time came when there was no one to type the labels, and the claimant took it upon herself to do so. The claimant was instructed by the employer not to touch the air-conditioning controls again or she could be terminated. Someone else moved the controls and the claimant was blamed for it. The employer also believed that the claimant continued to use a puncher although she had been instructed not to do so. The claimant denied using the puncher again after she was told not to. The employer also believed the claimant had refused to train the secretary. The claimant did not answer the telephone which she had been told at the time of hire by the owner that she did not have to answer telephones. On or about September 13, 1995, the office manager had assigned a task to the claimant involving W-2 formats. The office manager believed the claimant was taking too long in completing the task. The claimant continued to work on the assignment and told the office manager that she was only one cent off. The office manager approached the claimant to take the work away, and the claimant covered the work with her body. The office manager found the claimant's behavior to be insubordinate. The claimant believed the office manager was upset because the office manager had a verbal altercation on the telephone. The office manager told the owner about the incident, and the claimant was sent home for one day, to think about her job. The claimant was scheduled to go on vacation on September 20, 1995. On September 15, 1995, since the claimant was going on vacation, the owner asked the claimant about the status of the work. The owner was loud in his request and the claimant covered her ears, exclaiming, "you are driving me crazy." The owner asked the claimant if she needed to go home. The claimant responded that she did not. While the claimant was on vacation, the employer considered the claimant's future employment status. The employer's partner and the office manager recommended that the claimant be discharged. The claimant returned from her vacation on or about October 12, 1995, and she was advised by the owner that her services were no longer needed. (Emphasis added.)