852 So.2d 398 (2003)
Michael P. DAVIDSON, Appellant,
v.
AAA COOPER TRANSPORTATION and Florida Unemployment Appeals Commission, Appellee.
No. 3D03-880.
District Court of Appeal of Florida, Third District.
August 20, 2003.
*399 Michael P. Davidson, in proper person.
John D. Maher, Tallahassee, for appellee, Commission.
Before COPE, FLETCHER and WELLS, JJ.
WELLS, Judge.
Michael P. Davidson appeals from a final order of the Unemployment Appeals Commission denying unemployment benefits. We reverse.
Davidson was hired as a freight handler in September 1995 by AAA Cooper Transportation, a Southeast regional trucking carrier, to work on the loading dock where he was responsible for loading and unloading tractor trailers and for occasionally driving to the nearby Florida East Coast Railway terminal to transport trailers to AAA Cooper's facility. Davidson also was occasionally asked to make, and made, out of town "runs" to nearby locations. With the exception of one five day period approximately five years before his termination, Davidson had worked exclusively "at night," that is, during the early morning hours from 1:00 a.m. to 9:30 or 10:00 a.m., while traffic was light. During that single work week five years before his termination when he had agreed to help out by making local daytime deliveries, Davidson had almost been involved in two accidents and had been so aggravated by daytime traffic that he had almost "got[ten] out of the truck and had a fight with another motorist." Realizing that he *400 did not have the temperament to cope with the stresses of daytime driving, Davidson turned down AAA Cooper's subsequent offer to work days doing deliveries.
During Davidson's seven year tenure with AAA Cooper, Davidson, according to the terminal manager who ultimately fired him, had been "an excellent employee" who was "more than helpful to go the extra mile," an employee who had "never refused any assignment that ... [had been] given him."
Approximately five weeks before his employment was terminated, Davidson was asked, during his regular graveyard shift, to make a six hour line-haul run to Pompano and Ft. Pierce and back. Although this was not dock work, Davidson agreed, as he usually did, to make the run. But after hooking a trailer to the tractor that he was supposed to use, Davidson found that the tractor was not serviceable. He was told by his supervisor to find another. When Davidson finally found another tractor, the keys could not be located; he was told to wait for another suitable tractor to arrive. However, when a suitable tractor arrived, he was not permitted to use it because the oil light indicator was on. At this juncture, Davidson was assigned a truck without air conditioning or a radio.
Davidson, who viewed air conditioning as a matter of comfort, had driven off the road on previous nighttime runs and feared that he would not be able to stay awake without the distraction of a radio and refused to make the run in a tractor with no radio. Consequently, he was suspended for one week and advised that further refusal to accept assignments would result in termination.
Approximately one month later, following a ten hour shift that had commenced at approximately 1:00 a.m., Davidson was asked to make three daytime in-town deliveries. He refused, advising his supervisor that driving in heavy daytime traffic "totally aggravated" him and made him "mad." He also advised his supervisor that because his wife was at work, he had to pick up his children from school.[1] Since it was then 11:00 a.m., he did not believe that he could make even one of the three requested deliveries in time to be at his children's school by 2:00 p.m. Davidson's employment was terminated for insubordination.
On November 27, 2002, a UAC claims examiner denied Davidson's claim for benefits concluding that he had engaged in misconduct connected with the work. That decision was affirmed by a UAC appeals referee, who concluded that Davidson's refusal to drive "during regular hours," combined with his earlier refusal to drive without air conditioning and a radio, constituted an unjustified and "intentional refusal to follow a superior's valid work order" amounting to disqualifying misconduct connected with his work. This decision was affirmed by UAC, and Davidson was disqualified from receiving benefits.
An individual discharged from employment for conduct deliberately, or culpably negligently, antithetical to an employer's interests is not entitled to unemployment benefits. See Glenn v. Unemployment Appeals Comm'n, 731 So.2d 868, 869 (Fla. 1st DCA 1999); see also § 443.101(1)(a), Fla. Stat. (2003) (disqualifying those from benefits who have been discharged for misconduct connected with *401 work); § 443.036(29), Fla. Stat. (2003) (defining misconduct). The unemployment compensation statute is, however, to be liberally construed in favor of the claimant; by contrast, its disqualification provisions, being remedial in nature, are to be narrowly construed. See, e.g., Philemy v. Florida Dep't of Health & Rehabilitative Servs., 731 So.2d 64, 66 (Fla. 3d DCA 1999); Baptiste v. Waste Management, Inc., 701 So.2d 386, 387 (Fla. 3d DCA 1997); Maynard v. Florida Unemployment Appeals Comm'n, 609 So.2d 143, 145 (Fla. 4th DCA 1992); Panama City Hous. Auth. v. Sowby, 587 So.2d 494, 497 (Fla. 1st DCA 1991). As this court has repeatedly stated, misconduct serious enough to warrant dismissal is not necessarily sufficiently serious to warrant forfeiture of unemployment compensation benefits. See, e.g., Espanioly v. Facs Group, Inc., 755 So.2d 183, 184 (Fla. 3d DCA 2000) citing Benitez v. Girlfriday, Inc., 609 So.2d 665, 666 (Fla. 3d DCA 1992); Baptiste, 701 So.2d 386; Webb v. Rice, 693 So.2d 1109 (Fla. 3d DCA 1997); Miller v. Barnett Bank of Broward County, 650 So.2d 1089 (Fla. 3d DCA 1995).
Terminated employees are not, for example, necessarily disqualified from receiving benefits for refusing to perform tasks outside the scope of employment. See Maynard, 609 So.2d at 145. And employees who reasonably refuse to perform tasks within the scope of employment are also not necessarily disqualified from receiving benefits:
Opinions in previous cases assume that the supervisor's order must be reasonable in order for the employee to be held accountable for the refusal. They also state or assume that, although the employer's order may be reasonable, if the employee reasonably refuses to perform the required act, the employee is still eligible for unemployment compensation.

Chery v. Flagship Airlines, Inc., 692 So.2d 213, 214 (Fla. 3d DCA 1997) (emphasis added) quoting Pascarelli v. Unemployment Appeals Comm'n, 664 So.2d 1089, 1093 (Fla. 5th DCA 1995); see Jorge v. Florida Unemployment Appeals Comm'n, 765 So.2d 889, 890 (Fla. 3d DCA 2000) (applying "reasonableness standard" to find that claimant's refusal to obey a manager's order did not constitute misconduct); Crosby v. Unemployment Appeals Comm'n, 711 So.2d 260, 263 (Fla. 5th DCA 1998) (finding a reasonable refusal to perform a directive insufficient to support a denial of benefits).
In this case, Davidson refused, following completion of his regular ten hour graveyard shift, to make a number of local daytime deliveries. Local daytime deliveries fell outside the scope of the regular nighttime work that he had performed exclusively for the past five years. While his refusal to perform these tasks may have constituted sufficient justification for termination, it did not constitute misconduct under the unemployment compensation law that would justify denial of benefits. See Maynard, 609 So.2d at 145; see also Vazquez v. GFC Builders Corp., 431 So.2d 739, 741 (Fla. 4th DCA 1983) (stating that where "there is a positive understanding at the outset ... that an employee will not be required to perform a certain task ... the employer cannot renege on the understanding and, based thereon, charge the employee with misconduct"). Moreover, Davidson's refusal to make the requested daytime deliveries, based as it was on his past experiences which confirmed that he could not cope with the stresses of daytime driving, was reasonable under the circumstances and certainly not antithetical to his employer's interests. See Rodriguez v. Svinga Bros. Corp., 802 So.2d 455, 456 *402 (Fla. 3d DCA 2001) (concluding that trucker's refusal to transport twelve as opposed to eight containers for safety reasons was not unreasonable and did not constitute misconduct connected with work); Polgar v. Unemployment Appeals Comm'n, 664 So.2d 350, 351 (Fla. 5th DCA 1995) (holding that bus driver's refusal to drive because he was too tired to make a trip was reasonable and did not deprive him of the right to receive unemployment compensation benefits); see also Jorge, 765 So.2d at 890-891 (applying a reasonableness standard to conclude that claimant's refusal to continue to work after having worked for over twelve hours at what would amount to a reduced rate of pay did not constitute disqualifying misconduct). Davidson should not, therefore, have been disqualified from receiving benefits.
Accordingly, we reverse and remand.
NOTES
[1] Although the terminal manager testified that Davidson did not tell him that he had to pick up his children, the UAC appeals referee's findings of fact, while rejecting the explanation as good cause to refuse the assignment, accepted Davidson's testimony that he had advised his supervisor that he had to pick up his children.