Roger COBB, Brenda Cobb and Elisa Beth Creevy, Movants,

v.

KING KWIK MINIT MARKET, INC., Respondent.

Supreme Court of Kentucky.

Sept. 13, 1984.

Jan Paul Koch, Cold Spring, for movants.

Walter E. Haggerty, Cincinnati, Ohio, for respondent.

LEIBSON, Justice.

This is an unemployment compensation case. Roger Cobb was manager of a King Kwik Minit Market in Covington, Kentucky. His wife, Brenda, and Elisa Beth Creevy, were employees of the store. The issue is whether they should be denied benefits as employees who "left" their employment "voluntarily without good cause attributable to the employment." KRS 341.-370(1)(c).

The Kentucky Unemployment Insurance Commission so held. Kenton Circuit Court reversed that decision having concluded that the Commission had misapplied the law applicable to the facts. The Court of Appeals then reversed the Kenton Circuit Court with directions to affirm the order of the Commission. On discretionary review to this Court we have decided that the Kenton Circuit Court, not the Commission and the Court of Appeals, properly interpreted KRS 341.370 and that movants are entitled to recover unemployment compensation benefits.

Roger Cobb had been a manager for King Kwik for five and a half years. In the year preceding his termination his store had experienced a series of legal problems including a liquor violation charged against the store for sale by an employee to a minor and a personal citation to Cobb because the store's liquor licenses were not properly displayed. He was sensitized.

On June 10, 1981, Cobb's boss held a meeting of all area managers to discuss implementation of a new King Kwik "fast cash" game to promote sales. At that meeting Cobb questioned the legality of his store participating in the game because alcoholic beverages were sold on the premises. The supervisor asked Cobb to direct his question to the local Alcoholic Beverage Control Board office, which he did. He was informed that the game would violate statutes such as KRS 244.500 and that it would constitute "enticement" under Kentucky law. After Cobb reported back to

his boss, both of them went to the local ABC office for further information. At that time Cobb spoke over the telephone from that office to an attorney in the Alcoholic Beverage Control office in Frankfort, and was again advised that the game was illegal. Further, he received copies of statutes supposedly applicable.

A day or so later he was advised by his superior that King Kwik's counsel had researched the matter and determined that Cobb's store could legally participate in the game. Ultimately Cobb said the employees in his store would not participate until they had proof the game was legal, and in turn, he was informed that if he and all his employees did not participate they would be "replaced." All of the store's employees but the present movants then accepted King Kwik's offer to return to work on condition that they would participate in the game. The store has not been cited for violating any liquor laws by conducting the game on the premises.

The Commission believed that the movants had a "clear alternative" to losing their jobs, to participate in the game. It emphasized that there was no evidence that movants would have any personal liability, even if the game were illegal, because KRS 244.500(1), the statute in question, places liability on the licensee, not the employees.

The findings of the Kenton Circuit Court, reversing the Commission, state:

"There is no concept within the statutes, or public policy, that requires an employee to risk the advice given them by a lawful state agency. Refusing to break the laws of the Commonwealth is 'good cause' for the claimants' conduct herein, and the claimants are commended for their honesty."

The Court of Appeals decided that the ABC employees' comments were "mere advice" and concluded that there was substantial evidence of probative value in support of the Commission's position. The thrust of the Court of Appeal's position is:

"Two conflicting sets of legal advice were presented to the appellees; however, the relevant concern is that under

neither interpretation were they shown to have any personal liability." Slip opinion, pp. 3–4.

*Southern Bell T & T Co. v. Ky. Unemp. Ins. Commission,* Ky., 437 S.W.2d 775, 778 (1969), states:

"Judicial review of an award of the Unemployment Insurance Commission is governed by the general rule applicable to administrative actions. If the findings of fact are supported by substantial evidence of probative value, then they must be accepted as binding and it must *then be determined whether or not the administrative agency has applied the correct rule of law* to the facts so found." (Emphasis added.)

Respondent relies upon the rule that the Commission's findings of fact will not be disturbed if supported by substantial evidence. *Kentucky Unemployment Insurance Commission v. Murphy,* Ky., 539 S.W.2d 293, 294 (1976). But the facts here are not in dispute. The question at issue is the legal implications of the facts, a question of law and not of fact.

In *Murphy, supra,* the employee forfeited her job as a waitress because her employer refused to let her wear pants suit to work. She claimed that the restaurant was sometimes a bit cool and that she feared exposing herself when she stooped over. Whereas an employee's purely subjective belief as to suitable attire for her position may be a factual question, in the present case the claimants obeyed what they perceived to be a lawful command by a state agency. They were given copies of statutes which purported to supplement the state agency's directions. This was not a personal opinion that their actions would be illegal, or a *subjective* belief held by the movants, but a belief arrived at *objectively* on instructions from employees of a state agency.

We disagree with the view of the Court of Appeals that these instructions were mere advice no more binding than the advice received from corporate counsel, and that "the relevant concern is that under

neither interpretation (of KRS 244.500) were they (the employees) shown to have any personal liability." Slip opinion, p. 4.

It is fundamentally unsound to hold that the ordinary citizen elects to follow the directives of a state agency at his own risk and forfeits statutory rights to unemployment benefits if the acts in question are not subsequently found illegal by court order. Cf. *Firestone Textile Co. v. Meadows*, Ky., 666 S.W.2d 730 (1983). It would be still less desirable to hold that the employees should assume that conducting the game is in violation of law, but they should do so anyway because the legal liability for such violation falls on the liquor licensee rather than employees of the store. Assuming the activity is prohibited by law, an employee who refuses to assist in the enterprise and who is replaced for such refusal qualifies under KRS 341.370(1)(c) as having "good cause attributable to the employment." The fact that the employee was given the option to conduct the enterprise and avoid being replaced does not qualify as "a reasonable alternative," as that term is used in *Kentucky Unemp. Insurance Commission v. Murphy, supra* p. 388 and other cases cited by the respondent.

This case is similar to *Cantrell v. Kentucky Unemp. Insurance Commission*, Ky., 450 S.W.2d 235 (1970). In *Cantrell* an employee left her job to care for her critically ill husband, who died subsequently, and was replaced during her absence. In reversing the Commission which had denied unemployment compensation benefits, Judge Palmore stated, p. 236–7:

> "(W)e do not believe the circumstances of this case require any fol de rol about strict or liberal construction in order to arrive at the correct solution. When all else is said and done, common sense must not be a stranger in the house of the law. It would be positively inhuman to hold that this woman voluntarily quit her job without good cause—technically or otherwise."

While denying benefits in present circumstances may not qualify as "positively inhuman," surely it would qualify as rele-gating "common sense" to the status of "a stranger in the house of the law."

The decision of the Court of Appeals is reversed. The decision of Kenton Circuit Court is affirmed. The within action is remanded to the Kentucky Unemployment Insurance Commission with directions to proceed in conformity with the judgment of the Kenton Circuit Court.

STEPHENS, C.J., and AKER, GANT, LEIBSON, VANCE and WINTERSHEIMER, JJ., concur.

STEPHENSON, J., dissents and files herewith a dissenting opinion.

STEPHENSON, Justice, dissenting.

I am of the opinion the Court of Appeal's opinion is correct. KRS 244.500(1) places liability on the licensee, not the employees. The movants should not be heard to say that they did not have a "clear alternative" to losing their jobs. Participating in the game would not impose a personal risk so as to justify a refusal to participate.