573 So.2d 135 (1991)
Charles W. HUMMER III, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, et al., Appellees.
No. 90-271.
District Court of Appeal of Florida, Fifth District.
January 10, 1991.
*136 Michael M. O'Brien, of O'Brien and Hooper, P.A., Orlando, for appellant.
John W. Robinson and Bonita L. Kneeland, of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellee Century Cellunet, Inc.
No Appearance for appellee Unemployment Appeals Com'n.
HAMMOND, K.C., Associate Judge.
Charles Hummer appeals an administrative order denying him unemployment compensation benefits. We conclude that Hummer's conduct as disclosed by the record did not constitute misconduct warranting the denial of benefits and, accordingly, we reverse.
In February of 1989, Hummer was hired as a full time salesperson for Century Cellunet, a company which sells paging services. Hummer worked a 40-hour 5-day week, was paid a base salary plus commission, and was entitled to ten paid sick days and two paid personal days per year. Hummer told his immediate supervisor that he needed one day off a month to attend a manufacturer's meeting for a line of baby products that he sold on the side. The supervisor told Hummer that it was not a problem because Hummer was such an aggressive salesperson.
In July, Julie Fraser became Hummer's supervisor. Fraser called a sales meeting for July 24, but Hummer called in sick that day. Fraser called Hummer's home to check on him and left a message on his answering machine. The next morning, Hummer told Fraser that he was taking off one day a month for a job on the side. Fraser told Hummer that the state manager needed to be told about these absences. The state manager told Hummer that he would have to repay the company for the sick time that he had received and that he would not tolerate continued absences one day a month. Hummer told the state manager that he would be taking off a day in August, specifically August 14.
According to the state manager, he had decided to terminate Hummer's employment on the following day. Before he could do so, Hummer informed the state *137 manager that he was not selling products on the side but that he is HIV positive and needed to go for medical treatment once a month. After this meeting concluded, the state manager contacted the Human Resources Department of the company. On August 11, Hummer was given the option to resign or to have his employment terminated. Hummer was offered over $26,000 in return for signing a release and agreement not to sue the company for termination of employment.
Hummer declined to resign and did not accept the settlement offer. The company then terminated Hummer's employment. Hummer filed for unemployment benefits but his request for compensation was denied. On appeal from this denial, the referee found that Hummer had been discharged because of his untruthfulness and his defiance of his employer's demand that he stop being absent from work and thus affirmed the denial of benefits. After review, the decision of the appeals referee was affirmed. This appeal followed.
The unemployment compensation law provides that no benefits may be received if an employee is discharged for misconduct. § 443.101(1)(a), Fla. Stat. (1989). "Misconduct" is defined as:
(26) MISCONDUCT.  "Misconduct" includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
§ 443.036(26), Fla. Stat. (1989).
In determining whether misconduct has occurred which would disqualify a claimant from receiving unemployment compensation benefits, the statute should be liberally construed in favor of the claimant. § 443.031, Fla. Stat. (1989); Spaulding v. Florida Industrial Commission, 154 So.2d 334 (Fla. 3d DCA 1963). The unemployment compensation law is remedial in nature and thus its disqualification provisions must be narrowly construed. Langley v. Unemployment Appeals Commission, 444 So.2d 518 (Fla. 1st DCA 1984).
The courts have recognized that certain actions of employees, although warranting termination, do not constitute misconduct precluding unemployment compensation. For example, in Erber v. Federal Express Corporation, 409 So.2d 522 (Fla. 5th DCA 1982), this court found that the actions of the employee did not warrant the disallowance of unemployment benefits. In that case, Erber had failed to follow proper company procedures for disciplining an employee he supervised. Although Erber may have been misguided in his actions, this court concluded that he was not acting willfully, wantonly or with such a substantial disregard of his employer's interests so as to warrant the denial of benefits under the statute.
In Armstrong v. Unemployment Appeals Commission, 427 So.2d 357 (Fla. 5th DCA 1983), this court held that Armstrong was entitled to benefits even though her employer was justified in terminating her employment. Apparently Armstrong had failed to follow company procedures and was disloyal by failing to report a drunken employee and by turning over a key to a secured location to an unauthorized person. While recognizing that this conduct justified termination, this court held that Armstrong's actions did not amount to the willful or wanton disregard of employee duty which would support a denial of unemployment benefits.
The courts have also concluded that mere absenteeism is insufficient to warrant denial of benefits. For example, in Lamb v. Unemployment Appeals Commission, 424 So.2d 197 (Fla. 5th DCA 1983), Lamb was fired because he failed to appear for work or call his employer to report his absence. Lamb had spent the weekend moving into his new home, unforeseen problems required him to stay at home and his telephone was not working. This was the first and only time Lamb had failed to appear *138 for work without calling his employer and his employer did not controvert Lamb's explanation and apparently was not harmed by his absence. Under these circumstances, this court concluded that the action for which Lamb was fired did not amount to a willful and wanton disregard of his employer's rules and as such did not constitute misconduct warranting a disallowance of unemployment benefits.
In Goldstein v. Ury Kalai, M.D., P.A., 480 So.2d 695 (Fla. 4th DCA 1985), Goldstein, a receptionist/clerk in Dr. Kalai's office, was fired after she called in sick one day. During that day, Goldstein went to a brief job interview and was later seen at her home by a doctor who determined that she was in fact ill. The Unemployment Appeals Commission determined that an unauthorized absence from work for personal reasons not of a critical nature constituted misconduct and therefore Goldstein was disqualified from receiving benefits. On appeal, the court concluded that the finding of misconduct was erroneous because the evidence was legally insufficient to establish that Goldstein's illness was not serious enough to justify missing one day of work. The decision was also considered erroneous because there was no showing that Goldstein's absence was unauthorized. She was entitled to 5 1/2 days sick leave, of which she had previously taken only one day. Finally, the court concluded that Goldstein's decision not to report to work on a single day where she had no prior history of excessive absences and where she was in fact ill, although still capable of taking care of a few minutes of personal business, could not reasonably be interpreted as anything more than a good faith error in judgment. It did not rise to the level of deliberate and wanton disregard of her duties or her employer's interests, particularly where there was no showing that her one-day absence had any adverse effect on the operation of Dr. Kalai's office.
In the present case, Hummer's actions do not evince a willful and wanton disregard for his employer's interests. Hummer took only the leave time allotted to him and since he has a life-threatening illness, such leave time would be authorized. Hummer was an exemplary employee and exhibited no disloyalty or untruthfulness except regarding his medical condition. The Legislature has expressly recognized that AIDS victims suffer from irrational discrimination.[1] This deception appears designed to protect Hummer's privacy and not to harm his employer in any fashion. Perhaps Hummer should have been truthful and disclosed his medical condition to his employer. Hummer's failure to do so, however, shows at most an error in judgment and not a willful and wanton disregard or intentional and substantial disregard of his employer's interests or of his duties. Accordingly, the order below is reversed and the cause remanded for the awarding of unemployment benefits to Hummer.
REVERSED AND REMANDED.
COBB and HARRIS, JJ., concur.
NOTES
[1] Article 1, section 2 of the Florida Constitution provides that no person shall be deprived of any right because of a physical handicap. In 1989, the Legislature enacted section 760.50 which expressly provides that any person with or perceived as having AIDS, AIDS-related-complex or the HIV virus shall have every protection made available to handicapped persons. The Legislature specifically found that persons infected or believed to be infected with AIDS have suffered and will continue to suffer irrational and scientifically unfounded discrimination. The statute prohibits any AIDS-related discrimination in employment, housing, public accommodations, or governmental services.