664 So.2d 1089 (1995)
Rosalie PASCARELLI, Personal Representative of the Estate of John J. Santanello, Jr., Deceased, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, et al., Appellees.
No. 94-2808.
District Court of Appeal of Florida, Fifth District.
December 8, 1995.
*1090 Keith C. Warnock of Keith C. Warnock, P.A., Daytona Beach, for Appellant.
John D. Maher, Unemployment Appeals Commission, Tallahassee, for Appellee.
PETERSON, Chief Judge.
The personal representative of the estate of John J. Santanello, Jr., appeals an order of the Unemployment Appeals Commission which denied Santanello unemployment compensation benefits. We vacate the order of denial.
Santanello refused to drive an over-wide truckload from a work site because he thought the wide-load permit he was given by his employer prohibited driving a wide load on I-4, west of SR 434 in Orange County, during rush hours. The permit stated, "NO MOVEMENT OVER 12 FT WIDE ... 7am-9am & 4pm-6pm ... ORANGE CO W OF SR434... ." Santanello's load was fourteen feet wide, and his route along I-4 would have put him west of SR 434 in Orange County around 4:30 p.m. Santanello's supervisor testified that, because the permit did not prohibit travel on I-4, Santanello could have driven the truck legally through the assigned route.
The hearing officer did not determine that the permit prohibited travel on I-4, but did make the following findings:

FINDINGS OF FACT: The claimant was employed as a driver for a manufacturer of concrete storm drains and manholes from July 6, 1993 to July 13, 1994. On July 13, 1994, the claimant's supervisor told him that he needed to go to a job site, pick up a cement casting, and bring it back to be recast. The supervisor gave the claimant a wide load permit, the route directions, and told him that an escort would meet him at the job site. The claimant had carried wide loads before for the employer, but had never needed an escort. This load was 14 feet wide, and the law required an escort. The escort was waiting at the job site for the claimant. The claimant was scheduled to be at the job site to pick up the structure at approximately 3:30 p.m. Around 2:30 p.m., the claimant called his supervisor and told him that he was not going to pick up the load, because the permit did not allow him to travel on Interstate 4 (I-4) through Orlando during afternoon rush hour. The employer explained to the claimant that he was reading the permit incorrectly, and that he was permitted to take the load on I-4. The claimant agreed to take the load, but then called back a few minutes later and told the employer that he would not do it. The claimant had contacted some truck drivers on his citizens band (CB) radio, and asked them what they thought the permit prohibited. The claimant decided that he and the truck drivers were reading the permit correctly, and that the supervisor was wrong. The supervisor has eight years of experience in this business. Even if the supervisor were wrong, and the claimant was stopped by a police officer, only the company would be fined. The claimant was aware that he would not be fined, nor would his driving record be affected in any way. When the claimant returned to his work site, the claimant was told that he was discharged to [sic] failing to obey the order of his supervisor. The claimant then told the employer that he would go back to the job site and pick up the load. The supervisor told the claimant that it was too late. The claimant was discharged on July 13, 1994, for insubordination, for refusing to follow the instructions of his supervisor.
The hearing officer also made the following conclusions of law:

CONCLUSIONS OF LAW: The law provides that a claimant who has been discharged for misconduct connected with the work shall be disqualified from receiving benefits. "Misconduct connected with work" means a willful or wanton act or course of conduct in violation of the worker's duties and obligations to the employer.
* * * * * *
The claimant's supervisor told him that he was reading the permit incorrectly. The claimant was aware that he would not be fined, nor would his license be affected, even if he were stopped by a police officer. Even assuming that the claimant had serious concerns about the legality of delivering *1091 the oversize load during rush hour on I-4, the claimant chose to solicit the opinions of truck drivers on the road, rather than make a telephone call to the Florida Highway Patrol or the Department of Transportation.
The claimant failed to show that he had a valid reason for refusing to obey the order of his supervisor. Therefore, it can only be concluded that the claimant was discharged for misconduct connected with work within the meaning of the law, and he is disqualified from the receipt of benefits.
The hearing officer determined that, because Santanello failed to show that he had a valid reason for disobeying his supervisor's order to make the delivery, the only conclusion is that Santanello was fired for misconduct connected with work, and that therefore Santanello was disqualified from receiving benefits. However, the burden of proof is on the employer to show misconduct. Paul v. Jabil Circuit Co., 627 So.2d 545 (Fla. 2d DCA 1993).
"Misconduct" is defined in section 443.036(26), Florida Statutes (1995):
(26) Misconduct.  "Misconduct" includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
In determining whether misconduct has occurred which would disqualify a claimant from receiving unemployment benefits, the statute should be liberally construed in favor of the claimant. Hummer v. Unemployment Appeals Commission, 573 So.2d 135, 137 (Fla. 5th DCA 1991). The unemployment compensation law is remedial in nature and thus its disqualification provisions must be narrowly construed. Id.
In Spaulding v. Florida Industrial Commission, 154 So.2d 334 (Fla. 3d DCA 1963), the court stated:
[M]isconduct ... is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.
Id. (quoted in Varig Brazilian Airlines v. Florida Department of Commerce, Division of Employment Security, 354 So.2d 921 (Fla. 3d DCA 1978)).
Courts have recognized that certain actions of employees, though warranting termination, do not constitute misconduct precluding unemployment compensation. Hummer, 573 So.2d at 137. In Erber v. Federal Express Corp., 409 So.2d 522 (Fla. 5th DCA 1982), an employee was held not to be disqualified from receiving unemployment benefits where the employee did not follow required procedures in disciplining another employee. This court held that the employee's conduct, although probably misguided, was not willful or wanton or with such substantial disregard of the employer's interest as to warrant the denial of benefits under the statute. Similarly, in Armstrong v. Unemployment Appeals Com'n, 427 So.2d 357 (Fla. 5th DCA 1983), this court held that the conduct of a supervisory employee, who failed to report a drunken employee, and who gave a key to a secure area to an unauthorized person, did not amount to the wanton or willful disregard of employee duty which *1092 would support a denial of unemployment benefits.
A single act of insubordination can be misconduct but a single act arising out of poor judgment may not be misconduct. See Ford v. Southeast Atlantic Corp., 588 So.2d 1039 (Fla. 1st DCA 1991). Some decisions hold, in the context of a single act of disobedience, that an employee has been guilty of misconduct:

Clay County Sheriff's Office v. Loos, 570 So.2d 394 (Fla. 1st DCA 1990) (employee who attended radar training course in direct disobedience of superior's denial of his request was guilty of misconduct); National Ins. Servs., Inc. v. Unemployment Appeals Com'n, 495 So.2d 244 (Fla. 2d DCA 1986) (employees who refused to perform requirement that they clean the coffee area acted unreasonably and were guilty of misconduct); Sears, Roebuck & Co. v. Unemployment Appeals Com'n, 463 So.2d 465 (Fla. 2d DCA 1985) (employee who admitted kissing minor female employee on the cheek during working hours in violation of company policy was guilty of misconduct); Rosa v. Jefferson's Stores, Inc., 421 So.2d 818 (Fla. 4th DCA 1982) (employee who allowed her son to use her employee discount card against company policy was guilty of misconduct).
Ford, 588 So.2d at 1041.
Other cases seem to require repeated acts of disobedience:

Rubido v. Brinks, Inc., 601 So.2d 1298 (Fla. 3d DCA 1992) (employee of an armored car company violated a number of the employer's rules demonstrating a plain disregard for the company rules in a business which requires strict adherence to a certain set of standards); Varig Brazilian Airlines v. Florida Dep't of Commerce, 354 So.2d 921 (Fla. 3d DCA 1978) (baggage handler repeatedly refused to carry out his assigned duties and consistently violated personnel and company policies); Cancelliere v. BancFlorida FSB, 590 So.2d 23 (Fla. 2d DCA 1991) (contrary to bank personnel rules and repeated warnings not to continue this activity, a bank vice president wrote a number of overdrafts on his own account); Trinh Trung Do v. Amoco Oil Co., 510 So.2d 1063 (Fla. 4th DCA 1987) (gasoline truck driver was involved in a series of accidents and consistently operated his inherently dangerous vehicle in excess of the speed limit).
Yanda v. Aetna Life Insurance Co., 658 So.2d 1218 (Fla. 3d DCA 1995) (Green, J., dissenting).
Generally, courts require more than a single instance of poor judgment to disqualify a claimant from unemployment compensation:

Kelley v. Pueblo Wholesale Co., 627 So.2d 534 (Fla. 3d DCA 1993) (manager's delay in reporting a shortage at her cash register until she completed a personal investigation to determine the source of the discrepancy was not a "willful or wanton" disregard of store's interest, but at worst, poor judgment); Nelson v. Burdines, Inc., 611 So.2d 1329 (Fla. 3d DCA 1993) (employee's emotional reaction of destroying a company document was an isolated incident of poor judgment or a good faith error in discretion, not intentional disregard of employer's interests); Woskoff v. Desta Enter., Inc., 187 So.2d 101 (Fla. 3d DCA 1966) (employee's argument with her supervisor demanding that she be paid for a holiday was not tantamount to an intentional disregard of the employer's interest, but at most poor judgment); Bulkan v. Florida Unemployment Appeals Com'n, 648 So.2d 846 (Fla. 4th DCA 1995) (a mechanic's failure to comply with a new policy of completing work orders for repairs was an isolated incident of poor judgment); Hubbard v. Best Termite & Pest Control, 627 So.2d 581 (Fla. 2d DCA 1993) (employee's sick day after employer refused vacation day constituted poor judgment not misconduct); Rogers v. Florida Unemployment Appeals Com'n, 597 So.2d 382 (Fla. 2d DCA 1992) (a pre-school teacher's leaving a classroom of children unattended while searching for one missing child was not willful or wanton disregard of the employer's interest, at most bad judgment);
Yanda, 658 So.2d at 1220-21 (Green, J., dissenting).
The instant case involves a single instance of a refusal to follow a supervisor's *1093 order. Opinions in previous cases assume that the supervisor's order must be reasonable in order for the employee to be held accountable for the refusal. They also state or assume that, although the employer's order may be reasonable, if the employee reasonably refuses to perform the required act, the employee is still eligible for unemployment compensation. See, e.g., Spangler v. Unemployment Appeals Com'n, 632 So.2d 98 (Fla. 5th DCA 1994) (employee reasonably refused to enter infested area without protective gear); National Ins. Services, Inc. v. Florida Unemployment Appeals Com'n, 495 So.2d 244 (Fla. 2d DCA 1986) (employees acted unreasonably in refusing to clean coffee area); Smallwood v. Florida Dep't of Commerce, 350 So.2d 121 (Fla. 4th DCA 1977) (cause remanded for determination whether trucker who refused to drive at night impaired visually).
It cannot be held unreasonable to refuse to perform an illegal act. Therefore, if it indeed was illegal to drive the truck on I-4 in Orange County during the rush hour, the requirement that Santanello do so was unreasonable. On the other hand, the fact that it may have been legal to drive on I-4 at the relevant time is not dispositive. Rather, the dispositive question is whether it was unreasonable for Santanello to refuse to make the trip even though it actually may have been legal to do so. The permit in the record prohibited movement of an oversized truck in Orange County west of SR 434 during the rush hour. If Santanello had made the trip, he would have been traveling on I-4 in Orange County west of SR 434 during the rush hour, and, although the employer testified that travel on I-4 was permitted at the relevant time, the permit makes no exceptions for travel on I-4. Therefore, it was not unreasonable for Santanello to conclude that his scheduled route was illegal, and it was not unreasonable for him to refuse to make the trip.
Perhaps, as the hearing officer indicated, Santanello should have consulted the transportation department or the Highway Patrol, instead of fellow truckers, to determine the scope of the permit, but the failure to do so was, at worst, an error in judgment rather than an act of insubordination. Accordingly, Santanello was guilty of poor judgment, not insubordination. Because it was an isolated instance of poor judgment, Santanello was entitled to unemployment compensation.
The order of the Unemployment Appeals Commission is reversed and remanded for proceedings consistent with the opinion.
REVERSED.
W. SHARP and HARRIS, JJ., concur.