# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KM-00630-SCT

*EDSON DAVIS a/k/a EDSON L. DAVIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/10/2000 |
| TRIAL JUDGE: | HON. MICHAEL R. EUBANKS |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES L. GRAY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JEAN SMITH VAUGHAN |
| CITY PROSECUTING ATTORNEY: | KEVIN R. ROBERTS |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | REVERSED AND RENDERED - 12/13/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J., COBB AND DIAZ, JJ.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. On December 1, 1998, Maria Diamond and Carol Scarboro of the Pearl River County Society for the Prevention of Cruelty to Animals ("SPCA") filed affidavits with the Pearl River County Justice Court accusing Edson Davis ("Davis") of cruelty to animals. Davis was charged with five counts of animal cruelty in violation of Miss. Code Ann. § 97-41-1 (2000). On March 2, 1999, Justice Court Judge Hal Breland conducted a trial and found Davis guilty of four of the five counts. Davis was ordered to pay a fine and court costs. Davis was also sentenced to 32 days in jail, suspended upon payment of the fine and court cost. On April 5, 1999, Davis appealed this conviction to the Circuit Court of Pearl River County.

¶2. On December 3, 1998, in a separate action, Belinda Maddox, Animal Control Officer for the City of Picayune, filed affidavits in Municipal Court for the City of Picayune, accusing Davis of animal cruelty and neglect. On March 17, 1999, Municipal Court Judge M. D. Tate, II, conducted a trial on the matter and found Davis guilty of three counts of animal cruelty. On April 16, 1999, Davis appealed this judgment to the Circuit Court of Pearl River County.

¶3. Upon a joint motion by Davis and both prosecutors, the two appeals were consolidated. On February 25, 2000, a jury trial was held in the Circuit Court of Pearl River County, Judge Michael R. Eubanks presiding. The jury found Davis not guilty of the any counts of animal cruelty concerning the deprivation of water and food to the horses in question. However, Davis was found guilty of one count of animal cruelty, against a horse with a broken leg. He was sentenced to a six-month term of incarceration in the Pearl River

County Jail, but the sentence was suspended pending the payment of a $1,000 fine and court costs of $2,065.10, plus a condition not to violate any laws regarding the care of animals for one year. Feeling aggrieved, Davis filed a timely appeal and raises the following issues on appeal: (1) whether the trial court erred in refusing proposed instruction D-1; (2) whether the trial court erred in not allowing Amos Fowler to testify regarding statements made by an absent veterinarian; (3) whether the verdict was against the overwhelming weight of the evidence; and (4) whether Miss. Code Ann. § 97-41-1 imposes a duty upon the owner of an animal to euthanize it.

## FACTS

¶4. At the time in question, Davis was keeping approximately fourteen (14) horses on Amos Fowler's ("Fowler") land within the Picayune city limits. Sometime in January 1998, a group of young boys were riding four-wheelers in the pasture, chasing the herd of horses. While trying to avoid the hooligans, one of the horses, a young colt, slipped and fell, breaking its leg near the joint closest to the hoof. Fowler's children witnessed the incident and reported it to their father. Fowler contacted Charles Patterson ("Pat"), the horses' caretaker, who inspected the horse and confirmed that its leg was broken. Pat proceeded to give the colt a shot of penicillin and put a compress on the injured leg. At this time, Fowler claims he phoned a veterinarian (who was never identified). According to Davis's version of events, the veterinarian examined the horse and made recommendations to Pat who, in turn, informed Davis of the treatment possibilities. The options were to take the horse to Mississippi State University or Louisiana State University School of Veterinary Medicine to have the leg properly mended, or to isolate the horse, take the weight off the foot, give it pain medication, and allow the break to calcify. The latter method would leave the animal with a permanent limp. Due to the cost difference and the alleged advice of the veterinarian, Davis chose the second option despite knowing that the horse would have a permanent limp. Euthanizing the colt was never considered as an option. Testimony varied as to the abilities of the horse after its leg "healed."

¶5. In November 1998, eleven months after the horse broke its leg, Maria Diamond and Carol Scarboro, both of the SPCA, received a report concerning the limping colt. A search warrant was obtained, and the two inspected the animal, concluding that it was in pain. Dr. Dean Stringfellow, a doctor of veterinary medicine, was called to confirm the suspicions. He too concluded that the horse was in pain. Davis made much of the fact that Dr. Stringfellow felt the colt was experiencing chronic pain rather than acute pain. Subsequently, Dr. Stringfellow euthanized the animal. Davis contends that he was never notified of any of these proceedings and did not know that his horse had been put down until he read about the incident in the local newspaper.

¶6. Around the same time, the SPCA also received complaints that the other horses were extremely thin and appeared unhealthy. These complaints, as well as the situation described earlier led to the charges leveled against Davis. His conviction concerning the animal with the broken leg is the subject of the present appeal.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN REFUSING PROPOSED INSTRUCTION D-1.

¶7. Davis's first assignment of error concerns the refusal of proposed jury instruction D-1, which reads in pertinent part:

[T]hat you must find that the prosecution has proven beyond a reasonable doubt that the alleged acts of cruelty were motivated by a spirit of cruelty or disposition to inflict unnecessary pain and suffering on the animals.

Davis feels this instruction was necessary because it makes the accused's motivation of vital importance. In support of this contention, Davis cites *Stephens v. State*, 65 Miss. 329, 3 So. 458 (1888), in which this Court held that the motive of cruelty was essential to determine whether the act in question was criminal. *Stephens*, 3 So. at 458. Stephens was charged with killing hogs that were trespassing on his land and destroying his crops. *Id.* Davis, in search of guidance for interpreting the current statute, relies on this case which deals with a statute that is over one hundred years the predecessor of the one in question today. That statute, Miss. Code Chapter 77 § 2918 (Rev. ed. 1880) stated:

Any one who shall cruelly beat, abuse, starve, torture or purposely injure any horse, ox, or other animal, belonging to himself or another, shall be punished by a fine not exceeding three hundred dollars, or by imprisonment in the county jail, not exceeding six months, or by both such fine and imprisonment.

The State points out that Miss. Code Chapter 21 § 804 (Rev. ed. 1880) is the statute from which our current statute is derived. This statute reads in relevant part:

That if any person shall override, overdrive, torture, torment, deprive of necessary sustenance, or cruelly beat or needlessly mutilate, or cause or procure to be overridden, overdriven, overloaded, tortured, tormented, or deprived of necessary sustenance, or to be cruelly beaten, or needlessly mutilated, or killed, as aforesaid, any living creature, every such offender shall, for every such offence, be guilty of a misdemeanor.

Since no other case has come before this Court in interpreting either of the foregoing statutes, *Stephens* remains helpful in interpreting our current statute.

¶8. In *Stephen*, this Court held that "Unless appellant was actuated by a spirit of cruelty, or a disposition to inflict unnecessary pain and suffering on the animals, he was not guilty of the offense charged." *Stephens*, 3 So. at 458. The problem, as Davis sees it, is that the instruction given by the trial court and written by the prosecution does not include the necessary element of motive. The instruction given reads:

In order to find him guilty of this charge, the jury must find beyond a reasonable doubt as to each count that 1) Edson Davis; 2) willfully or knowingly deprived a living horse of necessary sustenance, food or drink or cause it to be deprived of necessary sustenance, food or drink, or tortured or caused it to be tormented, or tormented or caused it to be tormented, in Pearl River County, Mississippi.

To date, no cases have come before this Court requiring an analysis of the current statute. Although the given instruction does require the acts or omissions to be done "willfully or knowingly," Davis feels his instruction is a more accurate statement of the law.

¶9. This case deals with statutory interpretation; therefore, we are compelled to first examine the language of the statute in question.

The primary rule of construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein. Where the statute is plain and unambiguous there is no room for

construction, but where it is ambiguous the court, in determining the legislative intent, may look not only to the language used but also to its historical background, its subject matter, and the purposes and objects to be accomplished.

*Clark v. State ex rel. Miss. Med. Ass'n*, 381 So. 2d 1046, 1048 (Miss. 1980). In the one hundred plus years since *Stephens*, the Legislature has adopted Miss. Code Ann. § 97-41-1 (2000) which states:

> If any person shall override, overdrive, overload, torture, torment, unjustifiably injure, deprive of necessary sustenance, food, or drink; or cruelly beat or needlessly mutilate; or cause unjustifiably injured, tormented, or deprived of necessary sustenance, food or drink; or to be cruelly beaten or needlessly mutilated or killed, any living creature, every such offender shall, for every offense, be guilty of a misdemeanor.

¶10. The trial judge in the instant case felt that the inclusion of "willfully or knowingly" in the jury instruction adequately instructed the jury as to the defendant's state of mind. Neither the language of Davis's proposed instruction, nor the language of the instruction given to the jury can be found in the current statute. In the case against Stephens, this Court held that under Miss. Code Chapter 77 § 2918 (Rev. ed. 1880) "the motive with which the act was done is the test as to whether it was criminal or not." *Stephens*, 3 So. at 458. Miss. Code Chapter 77 § 2918 (Rev. ed. 1880) did not indicate that motive was required to prove a violation of the statute and neither does our current statute give any guidance as to the mens rea and/or motive of the accused. Davis had no way of knowing, from a fair reading of Miss. Code Ann. § 97-41-1, whether his discretion in choosing to mend the horse's leg without paying for a specialist would result in a violation of the statute.

¶11. Although neither party has questioned the statute's constitutionality, the issue involving the proper intent for a conviction under Miss. Code Ann. § 97-41-1 forces this Court to consider whether this statute is unconstitutional for vagueness. "The test to be used in determining whether a statute is unconstitutionally vague is whether the statute defines the criminal offense with sufficient definiteness such that a person of ordinary intelligence has fair notice of what conduct is prohibited." *Lewis v. State,* 765 So.2d 493 (Miss.2000) (citing, *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 525, 114 S.Ct. 1747, 1754, 128 L.Ed.2d 539, 552 (1994)); *Roberson v. State*, 501 So.2d 398, 400 (Miss.1987). Since Miss. Code Ann. § 97-41-1 fails to define the appropriate *mens rea*, Davis, is correct in his argument that, if the statute contains no language of intent coupled with motive, his only choices were to have the horse destroyed or take the horse to have him treated by experts (a costly endeavor). Whether the statute was intended by the Legislature to be *malum in se* or *malum prohibitum*, we cannot say. A statute against animal cruelty which is *malum prohibitum* allows little or no discretionary discipline or discretionary treatment of animals by their owners. The statute, without words of intent and motive, leaves Davis no room for using his own discretion in deciding whether he would be able to heal his own horse without having to destroy it. We therefore hold the statute to be unconstitutionally vague based on the due process clause of the Fourteenth Amendment to the United States Constitution.

¶12. In a review of other modern state cases involving the interpretation of animal cruelty statutes, a key issue often turns to the intent with which the accused has acted. *See* Sonja A. Soehnel, Annotation, *What Constitutes Statutory Offense of Cruelty to Animals -- Modern Cases*, 6 A.L.R. 5th 733, 755 (1992). The degree of intent with which the accused must act for a proper conviction varies from state to state. It should be noted here that § 97-41-15 covers the more serious offense regarding "Malicious or mischievous

injury to livestock". That statute states:

> Any person who shall maliciously, either our of a spirit of revenge or wanton cruelty, or who shall mischievously kill, maim or wound, or injure any livestock, or cause any person to do the same, shall be guilty of a felony.

The range of degrees of intent include: malicious, willful, intentional, knowing, reckless, criminal negligence, ordinary negligence, and voluntary intent. *Id.* at 755. When determining the proper intent, courts have attempted to balance the growing concern for the protection of animals with the discretion that humans have with respect to the treatment of their animals. *Id.* at 763. Affirmative acts of cruelty as well as a defendant's failure to act, such as failing to provide sufficient food, water, or shelter, and failure to provide proper medical care have all resulted in proper convictions under relevant animal cruelty statutes. *Id.* at 756-757.

¶13. In *Regalado v. United States*, 572 A.2d 416 (D.C. Ct. App. 1990), the District of Columbia Court of Appeals found that D.C.Code Ann. § 22-801 (1989), an animal cruelty statute very similar to the our Miss. Code Ann. § 97-41-1, did not designate the mens rea necessary for conviction. *Regalado,* 572 A.2d at 416, 419. The trial judge gave an instruction to the jury that "it was required to find that appellant "willfully" mistreated the puppy which was the subject of abuse in that case. *Id.* at 419. That instruction was derived by the trial judge from an instruction for cruelty to children under D.C.Code Ann. § 22-901 (1989). *Regalado,* 572 A.2d at 419. The court held that as between specific intent and general intent, D.C.Code Ann. § 22-901 (1989) should be interpreted to require a general intent. 572 A.2d at 420. The court stated:

> The specific intent would offer the animal owner the greatest protection, ... the general intent with malice requirement reflects the growing concern in the law for the protection of the animals, while at the same time acknowledging that humans have a great deal of discretion with respect to the treatment of their animals."

*Id.* That court held that the D.C. animal cruelty statute required a proof of willful intent with malice. *Id.* at 417. Had the trial court in the instant case given an instruction to the jury that included malice by Davis as a requirement for conviction, then Davis's reasons for trying to mend the horse's leg himself would have been properly considered by the jury. If the jury had found that Davis acted without malice, then the jury would have been obligated to acquit Davis.

¶14. The State argues that there is no intent requirement in Miss. Code Ann. § 97-41-1. However, we do not believe that the Legislature intended for the statute to be construed as a strict liability and/or *malum prohibitum* statute. Neither did the trial judge, who inferred the "willful and intentional" language, believe the statute was void of any intent requirement. Davis, using his discretionary judgment, as well as the discretion of others, in deciding to attempt to mend the horse's broken leg without taking the horse to a specialist, had no way of knowing that his motives were not in line with the statute.

¶15. At least one similar animal cruelty statute in New York has been interpreted as unconstitutionally vague. *People v. Rogers*, 703 N.Y.S.2d 891, 896 (N.Y. City Ct. 2000). That statute stated: "[a] person who ... tortures ... or unjustifiably injures, maims, mutilates or kills any animal ... is guilty of a misdemeanor."*Id.* at 892. Section 350(2) of that statute defines "Torture" or "Cruelty" as including "every act, omission, or neglect, where by unjustifiable physical pain, suffering or death is caused or permitted." *Id.* The question in *Rogers* was whether the statute failed to clearly define the proscribed conduct so one can avoid engaging in it in the first place without having to guess at its meaning. *Id.* The defendant in that case

used a rubber band to dock his puppy's tail, believing that his method was "justifiable" under the statute. *Id.* The court held the statute to be unclear as to the proscribed conduct and therefore held the statute to be unconstitutionally vague. *Id.* at 896.

¶16. Davis was aware that the horse would undergo some discomfort in the form of chronic pain with the horse's broken leg. However, using his own discretion, coupled with advice from the unnamed veterinarian, he chose to isolate the horse, take the weight off the foot, give it pain medication, and allow the break to calcify in attempt to preserve the horse's bloodline. The evidence suggests that the horse could run with the other horses and that the horse suffered no acute pain that would unduly torture the animal. In fact, the decision by the State to euthanize the horse was made 11 months after the injury occurred and based on a veterinarian's diagnosis of chronic pain. This type of pain would not warrant the immediate destruction of the horse without giving fair notice to the owner of the horse.

¶17. Having held the statute unconstitutional, we thus decline to rule on the other issues raised by Davis. With regard to the State's decision to destroy the horse, we find it disconcerting that an animal with a broken leg can be destroyed without proper notice to the owner. Furthermore, no one working for the State sought the advice of a horse specialist to determine whether the horse should have been destroyed. The veterinarian who destroyed the horse was not an expert in horses, and from his testimony, it was unclear whether he truly knew whether the horse's pain was sufficiently severe as to warrant immediate euthanization. **CONCLUSION**

¶18. We find that Davis had no way of knowing from the face of the statute that he was in violation of the law. An instruction regarding Davis's intent, motive or justification for not destroying the horse, in the eyes of this Court, would have been a reasonable interpretation of the statute. For that matter, the language of the statute is too vague for a proper determination of the mens rea, and this Court finds the statute unconstitutional under the due process clause of the Fourteenth Amendment to the United States Constitution. Therefore, the judgments of the Pearl River County Circuit Court and the Pearl River County Justice Court are reversed and rendered, and Edson Davis is discharged.

¶19. **REVERSED AND RENDERED**.

>   **PITTMAN, C.J., COBB AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. SMITH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, EASLEY AND CARLSON, JJ.**

>   **SMITH, PRESIDING JUSTICE, DISSENTING:**

¶20. The plurality concludes that the statute pursuant to which Davis was convicted, Miss. Code Ann. § 97-41-1 (2000), is unconstitutional because it gives no guidance as to the mens rea or the motive of the accused. Without such guidance, concludes the plurality, Davis had no room for discretion in deciding whether he would be able to heal his own horse without having to destroy it. In my view, the plurality errs in holding that the statute at issue is unconstitutional.

¶21. Statutes under constitutional attack have a presumption of validity attached to them, overcome only with a showing of unconstitutionality beyond a reasonable doubt. *Nicholson ex rel. Gollott v. State*, 672 So. 2d 744, 750 (Miss. 1996) (citing *Vance v. Lincoln County Dep't of Pub. Welfare*, 582 So. 2d 414, 419 (Miss. 1991)). In construing a statute imposing criminal penalties, this Court must determine

whether a person of reasonable intelligence would, by reading the statute, receive fair notice of that which is required or forbidden. ***Reining v. State***, 606 So. 2d 1098, 1103 (Miss. 1992) (citing ***State v. Burnham***, 546 So. 2d 690, 692 (Miss.1989)).

¶22. In my view, § 97-41-1 gives fair notice of that which constitutes animal cruelty. This Court has stated that where a crime is *malum prohibitum*, the Legislature's failure to set out a mens rea does not render the statute unconstitutional. ***Richmond v. State***, 751 So. 2d 1038, 1047 (Miss. 1999). The plurality refuses to recognize this crime as *malum prohibitum* because to do so "allows little or no discretionary discipline or discretionary treatment of animals by their owners." (Plurality Op. ¶11). This view is erroneous for two reasons.

¶23. First, the statute does not prevent Davis from using his discretion in treating his animal. Davis was not convicted of animal cruelty for attempting to treat his horse. Davis was convicted for attempting to treat his horse and failing to successfully do so, allowing the horse to limp around in pain for eleven months after the injury. The chronic or acute nature of the pain was a question of fact for the jury. Second, whether it is in the public interest to allow or encourage the discretion of animal owners in treating their animals is a determination for the Legislature. It is the duty and responsibility of this Court to construe and interpret the law, not to make it. ***Prichard v. Cleveland***, 314 So. 2d 729, 732 (Miss. 1975).

¶24. The plurality also finds that Davis had no way of knowing that his motives were not in line with the statute. Section 97-41-1 states:

> If any person shall override, overdrive, overload, torture, torment, *unjustifiably* injure, deprive of necessary sustenance, food, or drink; or *cruelly* beat or *needlessly* mutilate . . . any living creature, every such offender shall . . . be guilty of a misdemeanor.

(emphasis added). The Legislature has seen fit to include words of motive in this statute. The jury was instructed that it must find that Davis had willfully or knowingly tortured or tormented the horse. No words of motive are attached to "torture" or "torment." Surely, Davis does not ask this Court to hold that the Legislature must allow him to use his discretion to justifiably torture and torment an animal, or that this Court could conceive of a situation in which torture or torment were necessary and not cruel.

¶25. Davis has not demonstrated beyond a reasonable doubt that § 97-41-1 is unconstitutional. In my view, the plurality enters the realm of the Legislature in holding that the statute is unconstitutional. The jury in this case was properly instructed. Any error in the inclusion of the words "willfully" and "knowingly" in the jury instruction was harmless, as it merely increased the burden of the prosecution.

¶26. I would affirm Davis's conviction. Therefore, I respectfully dissent.

**WALLER, EASLEY AND CARLSON, JJ., JOIN THIS OPINION.**