DIAZ, Presiding Justice,
Concurring in Result only.
¶ 17. I must first note that the price gouging alleged in this case is particularly disturbing in light of the horrific aftermath of the worst natural disaster in United States history. Entire homes were reduced to slabs, leaving the citizens of the Gulf Coast scrambling for shelter. For a business to take advantage of these persons for pure financial gain, while they were at their most vulnerable, is deplorable.
¶ 18. With this in mind, the circumstances of the present case are, at the very least, unsettling, and I wholeheartedly agree that Ms. Sherman has demonstrated “good cause” for voluntarily leaving her employment. However, I cannot join today’s opinion. First, the new legal standard announced in today’s opinion places too heavy of a burden on the claimant and one that has not been met in this case. Second, in contrast to the majority’s holding to the contrary, the unemployment statute does require us to consider the risk to the employee’s “health, safety, or morals.” Third, although the majority fails to address Ms. Sherman’s argument that she had “good cause” to quit because her employer engaged in other morally questionable behavior, I find that her moral objections also entitle her to benefits.
*404 I.
¶ 19. The new standard announced by the majority requires an employee to demonstrate refusal “to engage in conduct that is illegal as a matter of law ” (emphasis supplied). Interestingly, this is the same standard that the MDES used to argue that Sherman was not entitled to benefits. I agree with Sherman’s response that requiring the employee to show actual wrongdoing places too heavy of a burden on the employee, for unless the State were to successfully convict the employer, the employee could never prove that the activity was indeed illegal.
¶20. Despite the lack of a criminal conviction, or even a criminal indictment, the Court finds that the Days Inn engaged in criminal activity “as a matter of law.” In other words, this Court has determined that every element of the crime of price gouging has been proven beyond a reasonable doubt, without a trial, and without allowing the Days Inn an opportunity to put on evidence in its defense. All that is left for this Court is to impose a sentence. Such a finding is unequivocally outside the jurisdiction of this Court-this is an appellate court, not one of original jurisdiction. White v. State, 159 Miss. 207, 131 So. 96 (1930). See also Miss. Const. Art. 6 § 146 (“The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals and shall exercise no jurisdiction on matters other than those specifically provided by this Constitution or by general law.”) Criminal charges are brought by the State, tried in the appropriate trial court, in front of a trial judge, with guilt or innocence determined by the finder of fact.
II.
¶21. The majority spends much of its opinion attempting to explain how “health, safety and morals” is irrelevant to finding good cause. The proposed justifications misconstrue the “reasonable person standard,” and by refusing to acknowledge that this Court has employed this same standard in previous unemployment cases regarding denial of benefits, the majority creates a new standard. Hoerner Boxes, Inc. v. Miss. Employment Sec. Comm’n, 693 So.2d 1343 (Miss.1997) and Huckabee v. Miss. Employment Sec. Comm’n, 735 So.2d 390, 397 (Miss.1999). The majority simply concludes that Sherman has demonstrated “good cause” without any discussion of what the term means, and I cannot accept this oversimplified analysis.
¶ 22. Though it appears that the majority finds otherwise, there is simply no “plain meaning” to the phrase “good cause.” When we are faced with such ambiguous and vague terms, this Court must attempt to determine the legislative intent and cannot apply whatever interpretation it wishes. By refusing to look to the entire statute, today’s approach is contrary to our “constitutional mandate of deference to the Legislature.” City of Ellisville v. Richardson, 913 So.2d 973, 983 (Miss.2005).
f 23. As we have repeatedly held, when the meaning of a statute is not readily apparent from the text, this Court turns to the rules of statutory interpretation. Davis v. State, 806 So.2d 1098, 1101 (Miss.2001). “The primary rule of construction is to ascertain the intent of the legislature from the statute as a whole and from the language used therein.” Clark v. State, 381 So.2d 1046, 1048 (Miss.1980).
¶ 24. Mississippi Code Section 71-5-513 does not define “good cause.” However, the same statute includes provisions for determining the suitability of work. Miss. Code Ann. § 71-5-513(A)(l)(e) and (A)(3)(a)(Rev.2000). These factors include “the degree of risk involved to [the employee’s] health, safety and morals.” Miss. *405 Code Ann. § 71-5-513(A)(3)(a). The suitability of available work and an employee’s reasons for voluntarily leaving her job are undeniably analogous. Thus, by looking at a corresponding subsection, we can determine that “good cause” would include those situations where an employee voluntarily leaves because the job poses a significant risk to her “health, safety and morals.”
¶ 25. Our society has determined what is acceptable behavior, and we have set parameters in the form of criminal statutes. Conduct contrary to law certainly can be considered contrary to a person’s morals. With this in mind, the ultimate question in this case is whether Sherman had “good cause” to quit when she was asked to engage in behavior that presented a significant risk to her morals.
¶ 26. Very few jurisdictions have considered this particular issue, but the majority of these states have concluded that an employee need only have a reasonable belief that her job requires conduct contrary to law or morality in order to have “good cause” to quit. See Roderick D. Eves, Eligibility for Unemployment Compensation as Affected by Claimant’s Voluntary Separation or Refusal to Work Alleging that the Work is Illegal or Immoral, 41 A.L.R.5th 123 (1996).
¶ 27. In O’Brien v. Employment Appeal Board, 494 N.W.2d 660 (Iowa 1993), an employee voluntarily left his job because his employer required him to engage in activities which he considered illegal and unethical. These activities included fraudulent sales, internal thefts, and various violations of the Environmental Protection Agency’s regulations. Id. at 661. The state’s Employment Appeal Board rejected the employee’s claims for benefits because he had not proven that his employer had violated the law. Id. at 662. The Iowa Supreme Court held that the proper inquiry was “whether a person of reasonable prudence would believe, under the circumstances faced by [the employee], that improper or illegal activities were occurring at [the workplace] that necessitated his quitting.” Id. The court reversed and remanded the case with directions to make findings of fact using the proper legal standard. Id.
¶28. In Pascarelli v. Unemployment Appeals Commission, 664 So.2d 1089 (Fla. 5th Dist.App.1995), a truck driver refused to drive a wide-load on a particular highway during rush hour believing that the conduct was illegal. Id. at 1090. Although the employer testified that the activity was permitted, the court held that “the dispositive question is whether it was unreasonable for [the employee] to refuse to make the trip even though it actually may have been legal to do so.” Id. at 1093. The court found that it was not unreasonable for the employee to conclude that his route was illegal, and therefore, he was entitled to unemployment benefits. Id.
¶29. In Tom Tobin Wholesale v. Unemployment Compensation Board of Review, 144 Pa.Cmwlth. 44, 600 A.2d 680 (1991), a computer analyst quit his job after he was asked to alter a computer program for illegal purposes. The court found that the employee had good cause to quit even though no illegal activity had taken place. Id. at 682. The court held that “the actual performance of the act is not required for an employee to sever the employment relationship.” Id. (citing Zinman v. Unempl. Compen. Bd. of Rev., 8 Pa.Cmwlth. 649, 305 A.2d 380 (1973)). The opinion went on to say that “[i]f Claimant had a reasonable belief that he was participating in an illegal activity or if his personal and professional integrity were so jeopardized by the circumstances, there can be a necessitous and compelling cause to ter- *406 mínate his employment.” Id. at 683 (citing Richner v. Unempl. Compen. Bd. of Rev., 95 Pa.Cmwlth. 572, 505 A.2d 1375 (1986)).
¶ 30. The Supreme Court of Kentucky also found that an objective belief in the illegality of the conduct satisfies the requirement of “good cause.” In Cobb v. King Kwik Minit Market, Inc., 675 S.W.2d 386 (Ky.1984), the employee voluntarily left his job after he was asked to implement a “fast cash” game to promote sales. Id. at 387. The employee was advised by the state’s Alcoholic Beverage Control office that the game would be illegal, but the employer assured him that the store could participate legally in the game. Id. at 387-88. The court found that because “the claimants obeyed what they perceived to be a lawful command by a state agency,” they were entitled to unemployment benefits. Id. at 388. The court also noted, “[i]t is fundamentally unsound to hold that the ordinary citizen elects to follow the directives of a state agency at his own risk and forfeits statutory rights to unemployment benefits if the acts in question are not subsequently found illegal by court order.” Id. at 389.
¶ 31. As the above cases demonstrate, the general rule is that as long as an employee has a reasonable belief that she is required to engage in conduct that is illegal or immoral, she has “good cause” to leave her employment voluntarily. Accord Munger v. Indus. Comm’n of Utah, 716 P.2d 808, 809-10 (Utah 1986) (“An employee can establish good cause for quitting if the conditions which cause him or her to quit are ‘caused by external pressure so compelling that a reasonably prudent person, exercising ordinary common sense and prudence, would be justified in quitting.’ ”) (quoting Denby v. Bd. of Rev. Of Indus. Comm’n, 567 P.2d 626, 630 (Utah 1977)); Young v. Scott, 212 Ga.App. 572, 442 S.E.2d 768, 770 (1994) (noting that the Georgia Department of Labor regulations require a “reasonable person” standard to voluntary resignations); Taylor v. Ohio Unempl. Compen. Bd. of Rev., 76 Ohio App.3d 405, 601 N.E.2d 670, 671 (1991) (defining “just cause” as “conduct which a person of ordinary intelligence would consider to be a justifiable reason for terminating employment”); Zinman, 305 A.2d at 382 (“The employee who voluntarily terminates his employment may carry his burden of proving cause by demonstrating conduct comporting with ordinary common sense and prudence.” (citing Rosell Unemployment Compen. Case, 184 Pa.Super. 556, 135 A.2d 769 (1957))).[7]
¶ 32. These cases are consistent with this Court’s use of the “reasonable person” standard in employment security cases. For example, in Hoerner Boxes, 693 So.2d 1343, this Court found that an employee was entitled to employment benefits when she voluntarily left her employment due to repeated sexual harassment. This Court held that “if an employee is sexually harassed to such a degree that an ordinary prudent employee would leave the ranks of the employed for the unemployed, then the employee should not be denied unemployment compensation benefits.” Id. at 1348 (emphasis supplied). Similarly, in Huckabee, 735 So.2d at 397 (Miss.1999), the Court held that “an employee who leaves work under the belief that she has been fired has not voluntarily terminated her employment where that belief is reasonable under the circumstances” (emphasis supplied).[8]
*407 ¶33. For these reasons, rather than saying that Sherman has demonstrated good cause just because this Court says so, I would adopt the position taken by other states-as long as an employee has a reasonable, objective belief that she is required to engage in conduct that presents a risk to her health, safety, or morals, she has “good cause” to leave her employment voluntarily under Mississippi’s employment security law. From a public policy standpoint, this standard would protect those who refuse to engage in illegal activity. Requiring the employee to show actual wrongdoing, as the majority holds, places too heavy a burden on the employee. Of course, if the employee has been convicted of a crime, this would be a factor in determining whether the employee had a reasonable belief. However, it should not be a prerequisite to demonstrating good cause.
¶ 34. This standard does not, as the majority suggests, mandate a finding in favor of the claimant when there is. no factual basis to support the employee’s objective belief that she is facing a great risk to her morals. The majority’s absurd examples would not withstand this objective analysis. Furthermore, the majority finds the word “morals” vague, but it is no more vague a term than “good cause.” By asserting this, the majority concedes that it will not apply the statutory language of Section 71 — 5—513(A)(3)(a). The refusal to recognize and apply this subsection is directly contrary to the “strict constructionist” views to which many members of the majority purport to adhere.
III.
¶ 35. Regarding the merits of Sherman’s claim, I agree that she has demonstrated good cause for leaving her employment, but not for the same reasons. Under the plain wording of the price-gouging statute, Sherman was justified in believing that doubling prices after the hurricane was in violation of this statute and that she could face criminal charges. Because her belief was reasonable, and not because the Days Inn broke the law, Sherman met her “burden of proof of good cause for leaving work,” by demonstrating that she was faced with a significant “risk to [her] ... morals.” Miss. Code Ann. § 71-5-513(A)(l)(c) (Rev.2000).
¶ 36. Sherman has argued that she also was required to engage in other immoral conduct, but, as stated before, the majority ignores this issue. Specifically, Sherman was concerned that the motel was double-renting its rooms, refusing to honor Red Cross vouchers, refusing to accept credit cards, and renting rooms that were unsuitable for habitation. Sherman notified her supervisor about these concerns as well, but to no avail.
¶ 37. MDES argues that Sherman’s “ethical concern was that she may be lying; and her testimony did not indicate engagement in activities traditionally considered immoral, such as activities involving drugs, sex, alcohol, or minors.” This argument is absurd. Sherman responds by *408 pointing to one of the oldest and most referenced sources for moral guidance-the Ten Commandments, which prohibit “bearing] false witness.” Exodus 20:16 and Deuteronomy 5:20. As one court put it, “[t]o lie is dishonest, immoral and unethical by all standards known to this court.... It should not be the purpose of the law to require people to lie to maintain a living.” Whipkey v. Ohio Bureau of Employment Servs., 63 Ohio Misc.2d 517, 635 N.E.2d 88, 91 (1994). I agree that lying to customers, especially to those made homeless by a natural disaster, is immoral conduct, and Sherman has demonstrated that she is entitled to benefits on this basis as well.
GRAVES, J., JOINS THIS OPINION. EASLEY, J., JOINS THIS OPINION IN PART.

. One court has gone so far as to say that when an employer violates laws related to the public safety, an employee has good cause per se to quit at any time. Parnell v. River Bend Carriers, Inc., 484 N.W.2d 442, 445 (Minn.Ct.App.1992).

. Both cases mention the idea of “constructive discharge,” that is, "when the employer *407 has made conditions so intolerable that the employee feels compelled to resign.” Hoerner, 693 So.2d at 1347 (citing Bulloch v. City of Pascagoula, 574 So.2d 637, 640 (Miss.1990)). A discussion of constructive discharge is unnecessary. The primary inquiry should be whether the employee reasonably believed that she was asked to engage in illegal or immoral activity. See 8 Judge Leslie H. Southwick, Encyclopedia of Mississippi Law (Jeffrey Jackson and Mary Miller eds.) § 74:41 (2001) ("Whether someone left voluntarily with good cause or was constructively discharged, may under unemployment compensation law not make much difference. Either category of departure will qualify a former employee for benefits.”).